# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DENBURY RESOURCES INC., *et al.*,[1] | ) | Case No. 20-33801 (DRJ) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | (Emergency Hearing Requested) |

## DEBTORS' EMERGENCY MOTION FOR ENTRY OF
## AN ORDER (I) AUTHORIZING THE PAYMENT OF CERTAIN
## PREPETITION TAXES AND FEES AND (II) GRANTING RELATED RELIEF

**EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON JULY 31, 2020, AT 7:30 A.M. (CENTRAL TIME) IN COURTROOM 400, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TEXAS 77002. IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**RELIEF IS REQUESTED NOT LATER THAN JULY 31, 2020.**

**PLEASE NOTE THAT ON MARCH 24, 2020, THROUGH THE ENTRY OF GENERAL ORDER 2020-10, THE COURT INVOKED THE PROTOCOL FOR EMERGENCY PUBLIC HEALTH OR SAFETY CONDITIONS.**

**IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.**

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S REGULAR DIAL-IN NUMBER. THE DIAL-IN NUMBER IS +1(832) 917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. YOU WILL BE ASKED TO KEY IN THE CONFERENCE ROOM NUMBER. JUDGE JONES'S CONFERENCE ROOM NUMBER IS 205691.**

**PARTIES MAY PARTICIPATE IN ELECTRONIC HEARINGS BY USE OF AN INTERNET CONNECTION. THE INTERNET SITE IS WWW.JOIN.ME. PERSONS CONNECTING BY MOBILE DEVICE WILL NEED TO DOWNLOAD THE FREE JOIN.ME APPLICATION.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Denbury Resources Inc. (7835); Denbury Air, LLC (7621); Denbury Brookhaven Pipeline Partnership, LP (6322); Denbury Brookhaven Pipeline, LLC (6471); Denbury Gathering & Marketing, Inc. (6150); Denbury Green Pipeline-Montana, LLC (6443); Denbury Green Pipeline-North Dakota, LLC (7725); Denbury Green Pipeline-Riley Ridge, LLC (2859); Denbury Green Pipeline-Texas, LLC (2301); Denbury Gulf Coast Pipelines, LLC (0892); Denbury Holdings, Inc. (1216); Denbury Onshore, LLC (7798); Denbury Operating Company (7620); Denbury Pipeline Holdings, LLC (0190); Denbury Thompson Pipeline, LLC (0976); Encore Partners GP Holdings, LLC (N/A); Greencore Pipeline Company, LLC (9605); Plain Energy Holdings, LLC (0543). The location of Debtor Denbury Resources Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 5320 Legacy Drive, Plano, Texas 75024.

ONCE CONNECTED TO WWW.JOIN.ME, A PARTICIPANT MUST SELECT "JOIN A MEETING". THE CODE FOR JOINING THIS HEARING BEFORE JUDGE JONES IS "JUDGEJONES". THE NEXT SCREEN WILL HAVE A PLACE FOR THE PARTICIPANT'S NAME IN THE LOWER LEFT CORNER. PLEASE COMPLETE THE NAME AND CLICK "NOTIFY".

HEARING APPEARANCES SHOULD BE MADE ELECTRONICALLY AND IN ADVANCE OF THE HEARING. YOU MAY MAKE YOUR ELECTRONIC APPEARANCE BY:

1) GOING TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE;

2) SELECTING "BANKRUPTCY COURT" FROM THE TOP MENU;

3) SELECTING "JUDGES' PROCEDURES AND SCHEDULES";

4) SELECTING "VIEW HOME PAGE" FOR JUDGE JONES;

5) UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE;"

6) SELECT "DENBURY RESOURCES INC., ET AL." FROM THE LIST OF ELECTRONIC APPEARANCE LINKS; AND

7) AFTER SELECTING DENBURY RESOURCES INC., ET AL. FROM THE LIST, COMPLETE THE REQUIRED FIELDS AND HIT THE "SUBMIT" BUTTON AT THE BOTTOM OF THE PAGE.

SUBMITTING YOUR APPEARANCE ELECTRONICALLY IN ADVANCE OF THE HEARING WILL NEGATE THE NEED TO MAKE AN APPEARANCE ON THE RECORD AT THE HEARING.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):

**Relief Requested**

1.      The Debtors seek entry of an order (the "Order"), substantially in the form attached hereto:  (a) authorizing the Debtors to remit and pay (or use tax credits to offset) the amounts due for Taxes and Fees (as defined herein) in the ordinary course of business; and (b) granting related relief.

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors confirm their consent, pursuant to

rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 363(b), 507(a)(8), 541, and 1107 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 6003 and 6004, and rules 4002-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

5.      On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Christian S. Kendall, Chief Executive Officer of Denbury Resources Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with this Motion and incorporated by reference herein.

6.      The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

## The Debtors' Taxes and Fees

7.      In the ordinary course of their business, the Debtors collect, withhold, and incur income, franchise, severance, sales, use, royalty withholding, and property taxes, as well as other

business, environmental, and regulatory taxes and fees (collectively, the "Taxes and Fees").[2] The Debtors pay or remit the Taxes and Fees to various federal, state, and local governments, including taxing and licensing authorities (collectively, the "Authorities").  A schedule identifying the Authorities is attached as **Exhibit 1** to the Order.[3]  Taxes and Fees are remitted and paid by the Debtors through checks and electronic funds transfers that are processed through their banks and other financial institutions on a monthly, quarterly, semiannual, or annual basis, depending on the nature and incurrence of a particular Tax or Fee.  From time to time, the Debtors also receive tax credits for overpayments or refunds in respect of Taxes or Fees.  The Debtors use these credits in the ordinary course of business to offset against future Taxes or Fees, or have such amounts refunded to the Debtors.

8.      The Debtors seek authority pursuant to this Motion to make such payments where: (a) Taxes and Fees accrue or are incurred in the ordinary course of business postpetition; (b) Taxes and Fees accrued or were incurred prepetition but were not paid prepetition or were paid in an amount less than actually owed; (c) Taxes and Fees paid prepetition by the Debtors were lost or otherwise not received in full by any of the Authorities and for which there may be interest or other penalties; (d) Taxes and Fees incurred for prepetition periods that may become due during the pendency of these chapter 11 cases; and/or (e) Taxes and Fees for so-called "straddle" periods (*i.e.*, periods that include the Petition Date).[4]

---

[2]   By this Motion, the Debtors do not seek the authority to collect and remit state and federal employee-related taxes and withholdings.  Such relief is instead requested in the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief*, filed contemporaneously herewith.

[3]   Although **Exhibit 1** is intended to be comprehensive, the Debtors may have inadvertently omitted Authorities from **Exhibit 1**.  By this Motion, the Debtors request relief with respect to Taxes and Fees payable to all Authorities, regardless of whether such Authority is specifically identified on **Exhibit 1**.

[4]   Claims for so-called "straddle" period Taxes and Fees may be entitled to administrative claim treatment pursuant

9.      As of the Petition Date, the Debtors estimate that there are approximately $25,900,000 of obligations on account of accrued and unpaid Taxes and Fees that will become due and payable in the ordinary course postpetition or in connection with certain Audits (as defined herein).[5]  The following table describes the various categories of Taxes and Fees and includes estimates of the Taxes and Fees accrued as of the Petition Date:

| Category | Description | Approximate Amount Accrued as of Petition Date |
|---|---|---|
| Franchise Taxes | The Debtors are required to pay various state franchise taxes to continue conducting their businesses pursuant to state laws.  The Debtors typically pay the franchise taxes on a quarterly, semiannual, or annual basis, depending on the jurisdiction. | $0 |
| Income Taxes | The Debtors incur federal and state income taxes.  The Debtors pay income taxes on a quarterly or annual basis, depending on the jurisdiction.  In 2019, the Debtors did not pay any federal income taxes due to net losses from operations but did incur state income taxes.  The Debtors expect to pay minimal income taxes in the current year. | $60,000 |

---

to section 503(b)(1)(B) of the Bankruptcy Code.  A recent Delaware bankruptcy court decision held that the portion of a "straddle" period tax claim that is attributable to the prepetition portion of such "straddle" period is not entitled to administrative priority and, in fact, is not entitled to priority under section 507(a)(7)(A) of the Bankruptcy Code.  See *In re Affirmative Ins. Holdings, Inc.*, 607 B.R. 175, 188 (Bankr. D. Del. 2019).  A Delaware district court recently overturned the bankruptcy court's decision, but it is unclear whether the district court's decision will be appealed and what the outcome of any such appeal might be.  The Debtors could be subject to late payment penalties and interest in the event they do not pay such "straddle" period Taxes and Fees, and a court may ultimately conclude that such Taxes and Fees are entitled to administrative treatment.  Thus, the Debtors are seeking the authority to pay such "straddle" period Taxes and Fees as they become due under applicable law.  The Debtors reserve their rights with respect to the proper characterization of such "straddle" period Taxes and Fees and to seek reimbursement of any portion of a payment that was made that ultimately is not entitled to administrative or priority treatment.

[5]    The Debtors are currently subject to three open and ongoing tax audits (the "Tax Audits") and three separate open and ongoing royalty audits related to the royalty withholding taxes (the "Royalty Audits" and, together with the Tax Audits, the "Audits").  This figure includes prepetition assessments against the Debtors as a result of the Audits (such amounts, collectively, the "Assessments"), including interest as a result of late payment, Assessments that are being contested in appropriate judicial or administrative proceedings, and amounts that may need to be posted as collateral to contest any such Assessment.  Nothing in this Motion or any related order constitutes or should be construed as an admission of liability by the Debtors with respect to any Audit or Assessment and the Debtors expressly reserve all rights with respect to any Audit or Assessment, including the right to contest any such Audit or Assessment.

| Category | Description | Approximate Amount Accrued as of Petition Date |
|---|---|---|
| Property Taxes | State and local laws in the jurisdictions in which the Debtors operate generally grant the Authorities the power to levy property taxes against the Debtors' real and personal property. To avoid the imposition of statutory liens on their real and personal property, the Debtors typically pay property taxes in the ordinary course of business on a monthly, quarterly, or annual basis, depending on the jurisdiction. | $15,870,000 |
| Royalty Withholding Taxes | In the ordinary course of business, the Debtors make mineral royalty payments to third parties. Certain states and the IRS require that the Debtors withhold taxes on such mineral royalty payments and remit such taxes to the Authorities. | $330,000 |
| Severance Taxes | The Debtors incur severance taxes in severing natural resources, such as oil and gas extraction, based on the volumes or amount of extraction. Severance taxes typically are calculated as a percentage of the value or volume of natural resources produced or some combination thereof. The Debtors pay Severance Taxes on either a monthly or quarterly basis, depending on the jurisdiction. | $9,080,000 |
| Sales and Use Taxes | The Debtors incur certain use taxes when they purchase materials and services from a vendor that is not registered to collect sales taxes for the state where the property is delivered or the services are provided (the "Use Taxes"). In these circumstances, the Debtors, as purchasers, must self-assess and pay the Use Taxes, when due, to the Authorities. Further, in jurisdictions where no Direct Pay permit is held, the Debtors remit sales tax on purchased goods and services performed, as applicable. | $250,000 |
| Environmental and Business Fees and Taxes[6] | The Debtors incur a variety of fees and taxes related to environmental and conservation laws and regulations, business licensing and annual report fees, permitting, and participation in state regulatory agencies and boards. The Debtors remit the environmental and business fees to the Authorities on a monthly, quarterly, or annual basis, depending on the jurisdiction. | $310,000 |
| | **Approximate Total** | **$25,900,000** |

10.    The Debtors believe that failing to pay the Taxes and Fees when due could materially disrupt the Debtors' business operations in several ways, including that: (a) failing to

[6]   On September 5, 2019, the Debtors entered into a consent decree (the "Consent Decree") with the United States Environmental Protection Agency, the Mississippi Commission on Environmental Quality, and the Mississippi Department of Environmental Quality pursuant to the Clean Water Act and the Mississippi Air and Water Pollution Control Law. The Consent Decree relates to certain discharges of oil occurring between August 8, 2008 and September 5, 2019 in fields owned and/or operated by the Debtors. As of the Petition Date, the Debtors have paid the civil penalty under the Consent Decree in full and must continue to comply with certain ongoing remediation requirements under the Consent Decree, including, but not limited to, future oil discharge reporting and implementing certain personnel training programs, which may result in additional penalties upon noncompliance.

pay certain of the Taxes and Fees, particularly franchise taxes, likely would cause the Debtors to lose their ability to conduct business in certain jurisdictions; (b) the Authorities could initiate audits, suspend operations, file liens, or seek to lift the automatic stay, which would unnecessarily divert the Debtors' attention from the restructuring efforts; (c) failing to pay Taxes and Fees potentially could subject certain of the Debtors' directors and officers to claims of personal liability, which likely would distract those key persons from their duties related to the Debtors' restructuring; and (d) unpaid Taxes and Fees may result in penalties, the accrual of interest, or both, which could negatively affect the Debtors' businesses or the restructuring efforts. Moreover, the Debtors collect and hold certain outstanding tax liabilities in trust for the benefit of the applicable Authorities, and these funds may not constitute property of the Debtors' estates. Lastly, certain unpaid Taxes and Fees will likely need to be paid in full as part of a chapter 11 plan in these cases.

## **Basis for Relief**

### I.      **Certain of the Taxes and Fees May Not Be Property of the Debtors' Estates.**

11.      Many of the Taxes and Fees are collected or withheld by the Debtors on behalf of the applicable Authorities and are held in trust by the Debtors. *See, e.g.*, 26 U.S.C. § 7501; Tex. Tax Code Ann. § 111.016(a) (2007) ("Any person who receives or collects a tax or any money represented to be a tax from another person holds the amount so collected in trust for the benefit of the state and is liable to the state for the full amount collected plus any accrued penalties and interest on the amount collected."). As such, these Taxes and Fees are not property of the Debtors' estates under section 541 of the Bankruptcy Code. *See, e.g.*, *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'"); *Matter of Al Copeland Enters., Inc.*, 991 F.2d 233, 237 (5th Cir. 1993) (noting that a debtor holds state sales tax revenues in trust for

the state); *In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000) ("[C]ertain

prepetition tax claims, such as sales taxes, could be trust fund claims.").

12.     Because the Debtors may not have an equitable interest in funds held on account of

such "trust fund" taxes, the Debtors should be permitted to pay those funds to the Authorities as

they become due in the ordinary course.[7]

## II.     Certain of the Taxes and Fees May Be Secured or Priority Claims Entitled to Special Treatment under the Bankruptcy Code.

13.     Claims for certain of the Taxes and Fees are or may be priority claims entitled to

payment before general unsecured claims.  *See* 11 U.S.C. § 507(a)(8) (describing taxes entitled to

priority treatment).  Moreover, to the extent that such amounts are entitled to priority treatment

under the Bankruptcy Code, the respective Authorities may attempt to assess fees, interest, and

penalties if such amounts are not paid.  *See* 11 U.S.C. § 507(a)(8)(G) (granting eighth priority

status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for

actual pecuniary loss").  Claims entitled to priority status pursuant to section 507(a)(8) of

the Bankruptcy Code must be paid in full under a confirmable plan pursuant to

section 1129(a)(9)(C) of the Bankruptcy Code.  Therefore, payment of certain of the Taxes and

Fees at this time only affects the timing of the payment for the amounts at issue and will not unduly

prejudice the rights and recoveries of junior creditors.  *See Equalnet Commc'ns*, 258 B.R. at 370

("[C]ertain types of claims enjoy a priority status in addition to being sometimes critical to the

ongoing nature of the business.  For instance, employee wage claims and certain tax claims are

both priority claims in whole or in part.  The need to pay these claims in an ordinary course of

business time frame is simple common sense.").

---

[7]     For the avoidance of doubt, the Debtors hereby request authority to pay the Taxes and Fees as provided herein regardless of whether such Taxes and Fees constitute trust fund obligations.

III.    **Payment of the Taxes and Fees Is a Sound Exercise of the Debtors' Business Judgment and Is Required by the U.S. Trustee.**

14.    Courts in the Fifth Circuit and elsewhere recognize that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value.  *See In re CoServ*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (authorizing payment of certain prepetition claims pursuant to "doctrine of necessity"); *Equalnet Commc'ns*, 258 B.R. at 369–70 (business transactions critical to the survival of the business of the debtor are exceptions to the general rule of nonpayment of prepetition claims prior to plan confirmation); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept.").  In doing so, these courts acknowledge that several legal theories rooted in sections 105(a), 363(b), and 1107(a) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

15.    Section 363(b) of the Bankruptcy Code permits a debtor, subject to court approval, to pay prepetition obligations where a sound business purpose exists for doing so.  *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification).  In addition, under section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty . . . to 'protect and preserve the estate, including an operating business' going-concern value.'"  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *CoServ*, 273 B.R. at 497).

16.    Moreover, under section 105(a) of the Bankruptcy Code, "the [C]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a); *In re Mirant Corp.*, 296 B.R. 427, 429 (Bankr. N.D.

Tex. 2003) (noting that non-payment of prepetition claims may seriously damage a debtor's business); *CoServ*, 273 B.R. at 497 (finding that sections 105 and 1107 of the Bankruptcy Code provide the authority for a debtor in possession to pay prepetition claims).

17.     The above-referenced sections of the Bankruptcy Code therefore authorize the postpetition payment of prepetition claims when the payments are critical to preserving the going-concern value of the debtor's estate, as is the case here.  *See, e.g.*, *CoServ*, 273 B.R. at 497 ("[I]t is only logical that the bankruptcy court be able to use [s]ection 105(a) of the [Bankruptcy] Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate.").  Further, the U.S. Trustee for the Southern District of Texas requires that debtors pay all tax obligations arising after the filing of the petition in full when due.  *See, e.g.*, *Region 7 Guidelines for Debtors-in-Possession*.

18.     Here, the Debtors' ability to pay the Taxes and Fees is critical to their continued and uninterrupted operations.  If certain Taxes and Fees remain unpaid, the Authorities may seek to recover such amounts directly from the Debtors' directors, officers, or employees, thereby distracting such key personnel from the administration of these chapter 11 cases.  *See, e.g.*, Tex. Tax Code Ann. § 111.016 (2007) (persons who hold money paid as a tax for the benefit of the state are liable to the state for the full amount); *In re Tex. Pig Stands, Inc.*, 610 F.3d 937, 942 (5th Cir. 2010) (noting that corporate officers may be held responsible for payment of certain corporate taxes).

19.     Any collection action on account of such claims, and any potential ensuing liability, would distract the Debtors and their personnel to the detriment of all parties in interest.  The dedicated and active participation of the Debtors' officers and employees is integral to the Debtors'

continued operations and essential to the orderly administration and, ultimately, the success of these chapter 11 cases.

20.    Furthermore, the Debtors' failure to pay the Taxes and Fees when due ultimately may result in increased tax liability for the Debtors if interest and penalties accrue on the Tax and Fee claims, which amounts may also be entitled to priority treatment. *See, e.g.*, Tex. Tax Code Ann. § 111.016(a) (2007).  Such a result would be contrary to the best interests of the Debtors' estates and all stakeholders.  As noted above, many of the Taxes and Fees may be entitled to priority status pursuant to section 507(a)(8)(C) of the Bankruptcy Code.  As priority claims, these obligations must be paid in full before any general unsecured obligations of the Debtors may be satisfied. *See In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000) (noting that paying priority tax claims in the ordinary course of business is "simple common sense"). The Debtors' failure to pay the prepetition Taxes and Fees as they come due may therefore increase the amount of priority claims held by the Authorities against the Debtors' estates to the detriment of the Debtors' general unsecured creditors and the Debtors' ability to confirm a chapter 11 plan during these cases. *See* 11 U.S.C. § 507(a)(8)(C), (G).

21.    Accordingly, the Court should grant the Debtors authority to pay the prepetition Taxes and Fees as provided herein.  Courts in this district routinely approve relief similar to that requested herein.

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

22.    The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral.  Under the Debtors' existing cash management system, the Debtors have made arrangements to readily identify checks or wire transfer requests relating

to the Taxes and Fees, as applicable.  Accordingly, the Debtors believe that checks or wire transfer requests that are not related to authorized payments will not be honored inadvertently.  The Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested herein.

**Emergency Consideration**

23.    Pursuant to Local Rule 9013-1(i), the Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  The Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  The failure to receive the requested relief during the first 21 days of these chapter 11 cases could disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring.   The Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested herein on an emergency basis.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

24.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**Reservation of Rights**

25.    Nothing contained herein or any actions taken by the Debtors pursuant to any order granting the relief requested by this Motion is intended or should be construed as:  (a) an admission

12

as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined herein or any order granting the relief requested by this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party in interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid and the Debtors and all other parties in interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## Notice

26.     Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Bankruptcy Local Rules, and is sufficient under the circumstances.  Without limiting the foregoing, due notice will be afforded, whether by facsimile, electronic mail, overnight courier or hand delivery, to parties in interest, including:  (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) JPMorgan Chase Bank, N.A., as administrative agent under the Debtors' revolving credit facility; (d)  Vinson & Elkins LLP, as counsel to the administrative agent under the Debtors' revolving credit facility; (e) Wilmington Trust, N.A., as indenture trustee under the Debtors'

(i) 9.00% second lien secured notes due 2021, (ii) 9.250% second lien secured notes due 2022, (iii) 7.50% second lien secured notes due 2024, (iv) 7.750% second lien secured notes due 2024, and (v) 6.375% convertible notes due 2024; (f) Wilmington Trust, N.A., as successor indenture trustee under the Debtors' (i) 6.375% subordinated notes due 2021, (ii) 4.625% subordinated notes due 2023, and (iii) 5.50% subordinated notes due 2022; (g) Paul, Weiss, Rifkind, Wharton & Garrison LLP, as counsel to the ad hoc committee of second lien bondholders; (h) Akin Gump Strauss Hauer & Feld LLP, as counsel to the ad hoc group of convertible bondholders; (i) the United States Attorney's Office for the Southern District of Texas; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (m) the state attorneys general for states in which the Debtors conduct business; (n) the Authorities; and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors request that the Court enter an order, substantially in the form attached hereto, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.


Houston, Texas
July 30, 2020

*/s/ Vienna F. Anaya*

**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Vienna F. Anaya (TX Bar No. 24091225)
Victoria Argeroplos (TX Bar No. 24105799)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:     (713) 752-4200
Facsimile:     (713) 752-4221
Email:         mcavenaugh@jw.com
               vanaya@jw.com
               vargeroplos@jw.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
Christopher J. Marcus, P.C. (*pro hac vice* admission pending)
Rebecca Blake Chaikin (*pro hac vice* admission pending)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         joshua.sussberg@kirkland.com
               christopher.marcus@kirkland.com
               rebecca.chaikin@kirkland.com

-and-

David L. Eaton (*pro hac vice* admission pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         david.eaton@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**Certificate of Accuracy**

   I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Local Rule 9013-1(i).

              */s/ Vienna F. Anaya*
              Vienna F. Anaya

**Certificate of Service**

   I certify that on July 30, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

              */s/ Vienna F. Anaya*
              Vienna F. Anaya