**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| DENBURY RESOURCES INC., *et al.*,[1] | ) ) ) | Case No. 20-33801 (DRJ) |
| Debtors. | ) ) ) | (Joint Administration Requested) (Emergency Hearing Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY
OF AN ORDER (I) APPROVING THE DEBTORS' PROPOSED
ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY
SERVICES, (II) PROHIBITING UTILITY PROVIDERS FROM ALTERING,
REFUSING, OR DISCONTINUING SERVICES, (III) APPROVING THE
DEBTORS' PROPOSED PROCEDURES FOR RESOLVING ADDITIONAL
ASSURANCE REQUESTS, (IV) AUTHORIZING CERTAIN FEE PAYMENTS
FOR SERVICES PERFORMED, AND (V) GRANTING RELATED RELIEF**

> **EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON JULY 31, 2020, AT 7:30 A.M. (CENTRAL TIME) IN COURTROOM 400, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TEXAS 77002. IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **RELIEF IS REQUESTED NOT LATER THAN JULY 31, 2020.**
>
> **PLEASE NOTE THAT ON MARCH 24, 2020, THROUGH THE ENTRY OF GENERAL ORDER 2020-10, THE COURT INVOKED THE PROTOCOL FOR EMERGENCY PUBLIC HEALTH OR SAFETY CONDITIONS.**
>
> **IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.**
>
> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S REGULAR DIAL-IN NUMBER.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Denbury Resources Inc. (7835); Denbury Air, LLC (7621); Denbury Brookhaven Pipeline Partnership, LP (6322); Denbury Brookhaven Pipeline, LLC (6471); Denbury Gathering & Marketing, Inc. (6150); Denbury Green Pipeline-Montana, LLC (6443); Denbury Green Pipeline-North Dakota, LLC (7725); Denbury Green Pipeline-Riley Ridge, LLC (2859); Denbury Green Pipeline-Texas, LLC (2301); Denbury Gulf Coast Pipelines, LLC (0892); Denbury Holdings, Inc. (1216); Denbury Onshore, LLC (7798); Denbury Operating Company (7620); Denbury Pipeline Holdings, LLC (0190); Denbury Thompson Pipeline, LLC (0976); Encore Partners GP Holdings, LLC (N/A); Greencore Pipeline Company, LLC (9605); Plain Energy Holdings, LLC (0543). The location of Debtor Denbury Resources Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 5320 Legacy Drive Plano, Texas 75024.

26475323v.1

> **THE DIAL-IN NUMBER IS +1(832) 917-1510.  YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES.  YOU WILL BE ASKED TO KEY IN THE CONFERENCE ROOM NUMBER.  JUDGE JONES'S CONFERENCE ROOM NUMBER IS 205691.**
>
> **PARTIES MAY PARTICIPATE IN ELECTRONIC HEARINGS BY USE OF AN INTERNET CONNECTION.  THE INTERNET SITE IS WWW.JOIN.ME.  PERSONS CONNECTING BY MOBILE DEVICE WILL NEED TO DOWNLOAD THE FREE JOIN.ME APPLICATION.**
>
> **ONCE CONNECTED TO WWW.JOIN.ME, A PARTICIPANT MUST SELECT "JOIN A MEETING".  THE CODE FOR JOINING THIS HEARING BEFORE JUDGE JONES IS "JUDGEJONES".  THE NEXT SCREEN WILL HAVE A PLACE FOR THE PARTICIPANT'S NAME IN THE LOWER LEFT CORNER.  PLEASE COMPLETE THE NAME AND CLICK "NOTIFY".**
>
> **HEARING APPEARANCES SHOULD BE MADE ELECTRONICALLY AND IN ADVANCE OF THE HEARING.  YOU MAY MAKE YOUR ELECTRONIC APPEARANCE BY:**
>
> **1) GOING TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE;**
>
> **2) SELECTING "BANKRUPTCY COURT" FROM THE TOP MENU;**
>
> **3) SELECTING "JUDGES' PROCEDURES AND SCHEDULES";**
>
> **4) SELECTING "VIEW HOME PAGE" FOR JUDGE JONES;**
>
> **5) UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE;"**
>
> **6) SELECT "DENBURY RESOURCES INC., ET AL." FROM THE LIST OF ELECTRONIC APPEARANCE LINKS; AND**
>
> **7) AFTER SELECTING DENBURY RESOURCES INC., ET AL. FROM THE LIST, COMPLETE THE REQUIRED FIELDS AND HIT THE "SUBMIT" BUTTON AT THE BOTTOM OF THE PAGE.**
>
> **SUBMITTING YOUR APPEARANCE ELECTRONICALLY IN ADVANCE OF THE HEARING WILL NEGATE THE NEED TO MAKE AN APPEARANCE ON THE RECORD AT THE HEARING.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion (this "Motion"):

## Relief Requested

1. The Debtors seek entry of an order (the "Order"), substantially in the form attached hereto: (a) approving the Debtors' proposed Adequate Assurance of payment for future utility services and determining that their proposed Adequate Assurance provides the Utility Providers with adequate assurance of payment under section 366 of the Bankruptcy Code; (b) prohibiting the Utility Providers from altering, refusing, or discontinuing service; (c) approving the Debtors'

26475323v.1

proposed procedures for resolving additional adequate assurance requests; (d) authorizing payment of prepetition fees to Vervantis Inc., the Debtors' third-party administrator for the payment of utility fees; and (e) granting related relief.

## Jurisdiction and Venue

2.	The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157 (b). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

3.	Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.	The bases for the relief requested herein are sections 105(a) and 366 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Bankruptcy Rule 6003, and rule 9013-1(i) of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

5.	On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Christian S. Kendall, Chief Executive Officer of Denbury Resources Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with this Motion and incorporated by reference herein.

6.	The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the

26475323v.1

appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

**Utility Services and Proposed Adequate Assurance**

**I.      The Utility Services and Utility Providers.**

7.      In connection with the operation of their business and management of their properties, the Debtors obtain electricity, natural gas, telecommunications, water, waste management (including sewer and trash), and other similar services (collectively, the "Utility Services") from a number of utility companies (each, a "Utility Provider" and, collectively, the "Utility Providers"). A nonexclusive list of the Utility Providers and their affiliates that provide Utility Services to the Debtors as of the Petition Date (the "Utility Services List") is attached hereto as **Exhibit 1** to the Order.[2] The relief requested herein is requested with respect to all Utility Providers providing Utility Services to the Debtors.

8.      To manage the Debtors' payments owed to some of their Utility Providers, the Debtors entered into that certain Service Agreement with Vervantis Inc. ("Vervantis"), dated September 20, 2019 (as amended, modified, and supplemented from time to time, the "Service Agreement"). Pursuant to the Service Agreement, in the ordinary course of business, the Debtors pay Vervantis amounts invoiced for certain Utility Services managed by Vervantis, a monthly fee of approximately $6,000, and a contingency fee equal to 20 percent of cost reductions obtained by Vervantis (the "Service Fees").[3] As of the Petition Date, the Debtors do not believe that they owe

---

[2]  Although the Debtors believe that the Utility Services List includes all of their Utility Providers, the Debtors reserve the right to supplement the list if they inadvertently omitted any Utility Provider. In addition, the inclusion of any entity on the Utility Services List is not an admission by the Debtors that such entity is, or is not, a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve all rights with respect to any such determination.

[3]  The Service Fees do not include any amounts paid directly by the Debtors to the Utility Providers.

any amounts on account of the Service Fees related to the Service Agreement. Out of an abundance of caution, the Debtors seek authority to pay any outstanding Service Fees, including any prepetition amounts related thereto, and to continue to honor their obligations under the Service Agreement as they come due in the ordinary course of business on a postpetition basis, consistent with past practice.

9. Uninterrupted Utility Services are essential to the Debtors' ongoing business operations, and hence the overall success of these chapter 11 cases. The Debtors' business involves developing, producing, and marketing oil and natural gas, with particular emphasis on enhanced oil recovery using carbon dioxide-enhanced extraction techniques. Given the technical and highly complex nature of their operations, the Debtors must maintain the ability to run their production equipment in a near-constant state. Moreover, the Debtors' operations require electricity and gas for lighting, heating, and air conditioning. In addition to the production processes conducted in the field, the Debtors operate corporate offices, as well as several regional field offices responsible for ensuring the smooth operation of the Debtors' business. These offices require electricity, telecommunications, water, and waste management services to operate in each of their respective locations. Should any Utility Provider refuse or discontinue service, even for a brief period, the Debtors' business operations would be severely disrupted, and such disruption could jeopardize the Debtors' ability to manage their restructuring efforts. Accordingly, it is essential that the Utility Services continue uninterrupted during these chapter 11 cases.

10. To the best of the Debtors' knowledge, there are no defaults or arrearages with respect to the undisputed invoices for prepetition Utility Services. On average, the Debtors pay approximately $11.8 million each month for third-party Utility Services, calculated as a historical average payment for the twelve-month period ended June 2020. Accordingly, the Debtors estimate

that their cost for Utility Services during the initial 30 days following the Petition Date, will be approximately $11.8 million.

11. The Debtors have provided certain of the Utility Providers with prepetition surety bonds and deposits (collectively, the "Prepetition Deposits").[4] The Debtors estimate the amount currently held as Prepetition Deposits with respect to all Utility Providers is approximately $8.2 million.[5]

## II. Proposed Adequate Assurance of Payment.

12. The Debtors intend to timely pay postpetition obligations owed to the Utility Providers in the ordinary course of business. The Debtors believe that cash on hand, cash generated in the ordinary course of business, and cash available to the Debtors under the Debtors' postpetition financing facility will provide sufficient liquidity to pay the Debtors' Utility Service obligations in accordance with their prepetition practice during the pendency of their chapter 11 cases.

13. To provide additional assurance of payment, the Debtors propose to deposit into a segregated account $3.3 million (the "Adequate Assurance Deposit"), which represents an amount equal to approximately one-half of the Debtors' average monthly cost of Utility Services, calculated based on the Debtors' average utility expenses for the twelve-month period ended June 30, 2020, net of any prepetition deposits provided to the Utility Providers in the ordinary

---

[4] The Debtors do not seek authority to maintain the utility bonds pursuant to this Motion, but rather request such authority as part of the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Continue their Surety Bond Program and (II) Granting Related Relief* filed contemporaneously herewith.

[5] To the extent that the Prepetition Deposits constitute deposits held by the Utility Providers, the Debtors will engage with such Utility Providers to ensure that the combination of any such deposit and the Adequate Assurance Deposit is sufficient to satisfy the Debtors' obligations under section 366 of the Bankruptcy Code.

course.⁶  The Adequate Assurance Deposit will be held in the segregated account for the benefit of the Utility Providers (the "<u>Adequate Assurance Account</u>") for the duration of these chapter 11 cases and may be applied to any postpetition defaults in payment to the Utility Providers.  The Adequate Assurance Deposit will be held in the Debtor-controlled Adequate Assurance Account at JP Morgan Chase Bank, N.A..  The Debtors will deposit the Adequate Assurance Deposit in the Adequate Assurance Account within five business days after entry of the Order granting this motion.

14. The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' cash flow from operations and cash on hand, demonstrates their ability to pay for future Utility Services in accordance with their prepetition practices (collectively, the "<u>Proposed Adequate Assurance</u>") and constitutes sufficient adequate assurance to the Utility Providers in full satisfaction of section 366 of the Bankruptcy Code.

### III. The Adequate Assurance Procedures.

15. Any Utility Provider that is not satisfied with the Proposed Adequate Assurance may make a request for additional or different adequate assurance of future payment (each, an "<u>Adequate Assurance Request</u>") pursuant to the adequate assurance procedures set forth in the proposed order (the "<u>Adequate Assurance Procedures</u>").  The Adequate Assurance Procedures set forth a streamlined process for Utility Providers to address potential concerns with respect to the Proposed Adequate Assurance, while at the same time allowing the Debtors to continue their business operations uninterrupted.  More specifically, the Adequate Assurance Procedures permit a Utility Provider to object to the Proposed Adequate Assurance by filing and

---

⁶ Out of an abundance of caution, in addition to the Debtors' average monthly cost of Utility Services, the Adequate Assurance Deposit includes an additional $175,184 to provide adequate assurance to any Utility Provider that may have been inadvertently excluded from the Utility Services List.

serving an Adequate Assurance Request upon certain notice parties. The Debtors, in their discretion, may then resolve any Adequate Assurance Request by mutual agreement with the Utility Provider and without further order of the Court. If the Adequate Assurance Request cannot be resolved by mutual agreement, the Debtors may seek Court resolution of the Adequate Assurance Request. Unless and until a Utility Provider files an objection or serves an Additional Assurance Request, such Utility Provider shall be: (a) deemed to have received adequate assurance of payment "satisfactory" to such Utility Provider in compliance with section 366 of the Bankruptcy Code; and (b) forbidden to discontinue, alter, or refuse services to, or discriminate against, the Debtors on account of any unpaid prepetition charges, or require additional assurance of payment other than the Proposed Adequate Assurance.

**IV.     Modifications to the Utility Services List.**

16.     The Debtors have made an extensive and good-faith effort to identify all Utility Providers and include them on the Utility Services List. Nonetheless, to the extent the Debtors subsequently identify additional Utility Providers or discontinue any Utility Services, the Debtors seek authority, to amend the Utility Services List to add or remove any Utility Provider.[7] The Debtors further request that the relief requested in this motion, including the proposed Adequate Assurance Procedures, and any order granting this motion shall apply to any subsequently identified Utility Provider, regardless of when such Utility Provider was added to the Utility Services List. The Debtors will serve a copy of this motion and the Order approving the requested relief on any Utility Provider subsequently added to the Utility Services List, and any subsequently added Utility Provider shall have twenty days from the date of service of this motion

---

[7] As noted, the Adequate Assurance Deposit includes $175,184 to provide adequate assurance to subsequently identified Utility Providers that may have been inadvertently excluded from the Utility Services List.

and the Order to make a request for adequate assurance of payment. Further, the Debtors shall have the period specified in the proposed Adequate Assurance Procedures to seek to resolve any subsequently added Utility Provider's request for adequate assurance of payment by mutual agreement with the Utility Provider without further order of this Court or the need to schedule a hearing with this Court to determine the adequacy of assurance payment in accordance with the proposed Adequate Assurance Procedures.

### Basis for Relief

17. Section 366 of the Bankruptcy Code protects a debtor against the immediate termination or alteration of utility services after the Petition Date. *See* 11 U.S.C. § 366. Section 366(c) of the Bankruptcy Code requires the debtor to provide "adequate assurance" of payment for postpetition services in a form "satisfactory" to the utility company within thirty days of the petition date, or the utility company may alter, refuse, or discontinue service. 11 U.S.C. § 366(c)(2). Section 366(c)(1) of the Bankruptcy Code provides a non-exhaustive list of examples for what constitutes "assurance of payment." 11 U.S.C. § 366(c)(1). Although assurance of payment must be "adequate," it need not constitute an absolute guarantee of the debtor's ability to pay. *See, e.g.*, *In re Great Atl. & Pac. Tea Co.*, No. 11-CV-1338 (CS), 2011 WL 5546954, at *5 (S.D.N.Y. Nov. 14, 2011) (finding that "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full").

18. When considering whether a given assurance of payment is "adequate," the Court should examine the totality of the circumstances to make an informed decision as to whether the Utility Provider will be subject to an unreasonable risk of nonpayment. *See*, *e.g.*, *In re Keydata Corp.*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (citing *In re Cunha*, 1 B.R. 330 (Bankr. E.D. Va. 1979)); *In re Adelphia Bus. Sols., Inc.*, 280 B.R. 63, 82–83 (Bankr. S.D.N.Y. 2002).

In determining the level of adequate assurance, however, "a bankruptcy court must focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Va. Elec. & Power Co.*, 117 F.3d at 650 (internal quotations omitted) (citing *In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987). Accordingly, demands of a Utility Provider for a guarantee of payment should be refused when the Debtors' specific circumstances already afford adequate assurance of payment.

19. Termination of the Utility Services could result in the Debtors' inability to operate their businesses to the detriment of all stakeholders. *In re Pilgrim's Pride Corp.*, No. 08-45664 (DML), 2009 WL 7313309, at *2 (Bankr. N.D. Tex. Jan. 4, 2009) ("The consequences of an unexpected termination of utility service to [the debtors] could be catastrophic."); cf. *In re Monroe Well Serv., Inc.*, 83 B.R. 317, 321–22 (Bankr. E.D. Pa. 1988) (noting that without utility service the debtors "would have to cease operations" and that section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it"). Here, the Utility Providers are adequately assured against any risk of nonpayment for future services. The Debtors intend to pay all postpetition obligations owed to the Utility Providers in the ordinary course. The Adequate Assurance Deposit and the Debtors' ongoing ability to meet obligations as they come due in the ordinary course provide assurance that the Debtors will pay their future obligations to the Utility Providers.

20. Courts are permitted to fashion reasonable procedures, such as the Adequate Assurance Procedures proposed herein, to implement the protections afforded under section 366 of the Bankruptcy Code. *See, e.g.*, *In re Circuit City Stores Inc.*, No. 08-35653, 2009 WL 484553, at *5 (Bankr. E.D. Va. Jan. 14, 2009) (stating that "the plain language of § 366 of the Bankruptcy

Code allows the court to adopt the [p]rocedures set forth in the Utility Order"). Such procedures are important because, without them, the Debtors "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in their efforts to reorganize." *Id.* Notwithstanding a determination that the Proposed Adequate Assurance constitutes sufficient adequate assurance, any rights the Utility Providers believe they have under sections 366(b) and 366(c)(2) of the Bankruptcy Code are wholly preserved under the Adequate Assurance Procedures. *See id.* at *5–6. The Utility Providers still may choose, in accordance with the Adequate Assurance Procedures, to request modification of the Proposed Adequate Assurance. *See id.* at *6. The Adequate Assurance Procedures, however, avoid a haphazard and chaotic process whereby each Utility Provider could make an extortionate, last-minute demand for adequate assurance that would force the Debtors to pay under the threat of losing critical Utility Services. *See id.* at *5.

21. The Adequate Assurance Procedures are reasonable and in accord with the purposes of section 366 of the Bankruptcy Code, and thus the Debtors respectfully request that Court grant the relief requested herein.

22. Further, the Court possesses the power, under section 105(a) of the Bankruptcy Code, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Adequate Assurance Procedures and the Proposed Adequate Assurance are necessary and appropriate to carry out the provisions of the Bankruptcy Code, particularly section 366 thereof. Accordingly, the Court should exercise its powers under sections 366 and 105(a) of the Bankruptcy Code and approve both the Adequate Assurance Procedures and the Proposed Adequate Assurance.

**Emergency Consideration**

23. Pursuant to Bankruptcy Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." The Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. The failure to receive the requested relief during the first 21 days of these chapter 11 cases could disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring because uninterrupted Utility Services are essential to the Debtors' ongoing business operations. The Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested herein on an emergency basis.

**Processing of Checks and Electronic Fund Transfers Should Be Authorized**

24. The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral. Under the Debtors' existing cash management system, the Debtors have made arrangements to readily identify checks or wire transfer requests relating to an authorized payment related to any Adequate Assurance Request or Utility Service, as applicable. Accordingly, the Debtors believe that checks or wire transfer requests that are not related to authorized payments will not be honored inadvertently. The Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to

receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested herein.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

25. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Reservation of Rights

26. Nothing contained herein or any actions taken by the Debtors pursuant to any order granting the relief requested by this Motion is intended or should be construed as: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined herein or any order granting the relief requested by this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

**Notice**

27.     Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Bankruptcy Local Rules, and is sufficient under the circumstances.  Without limiting the foregoing, due notice will be afforded, whether by facsimile, electronic mail, overnight courier or hand delivery, to parties-in-interest, including:  (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) JPMorgan Chase Bank, N.A., as administrative agent under the Debtors' revolving credit facility; (d) Vinson & Elkins LLP, as counsel to the administrative agent under the Debtors' revolving credit facility; (e) Wilmington Trust, N.A., as indenture trustee under the Debtors' (i) 9.00% second lien secured notes due 2021, (ii) 9.250% second lien secured notes due 2022, (iii) 7.50% second lien secured notes due 2024, (iv) 7.750% second lien secured notes due 2024, and (v) 6.375% convertible notes due 2024; (f) Wilmington Trust, N.A., as successor indenture trustee under the Debtors' (i) 6.375% subordinated notes due 2021, (ii) 4.625% subordinated notes due 2023, and (iii) 5.50% subordinated notes due 2022; (g) Paul, Weiss, Rifkind, Wharton & Garrison LLP, as counsel to the ad hoc committee of second lien bondholders; (h) Akin Gump Strauss Hauer & Feld LLP, as counsel to the ad hoc group of convertible bondholders; (i) the United States Attorney's Office for the Southern District of Texas; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (m) the state attorneys general for states in which the Debtors conduct business; (n) the Utility Providers; and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

26475323v.1

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, respectively, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Houston, Texas
July 30, 2020

          */s/ Joshua A. Sussberg*
          **KIRKLAND & ELLIS LLP**
          **KIRKLAND & ELLIS INTERNATIONAL LLP**
          Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
          Christopher J. Marcus, P.C. (*pro hac vice* admission pending)
          Rebecca Blake Chaikin (*pro hac vice* admission pending)
          601 Lexington Avenue
          New York, New York 10022
          Telephone:   (212) 446-4800
          Facsimile:    (212) 446-4900
          Email:        joshua.sussberg@kirkland.com
                          christopher.marcus@kirkland.com
                          rebecca.chaikin@kirkland.com

          -and-

          David L. Eaton (*pro hac vice* admission pending)
          300 North LaSalle Street
          Chicago, Illinois 60654
          Telephone:   (312) 862-2000
          Facsimile:    (312) 862-2200
          Email:        david.eaton@kirkland.com

          *Proposed Co-Counsel to the Debtors*
          *and Debtors in Possession*

26475323v.1

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Local Rule 9013-1(i).

*/s/ Joshua A. Sussberg*
Joshua A. Sussberg

**Certificate of Service**

I certify that on July 30, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh