# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DENBURY RESOURCES INC., *et al.*,[1] | ) | Case No. 20-33801 (DRJ) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | (Emergency Hearing Requested) |

## DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO CONTINUE THEIR SURETY BOND PROGRAM AND (II) GRANTING RELATED RELIEF

EMERGENCY RELIEF HAS BEEN REQUESTED.  A HEARING WILL BE CONDUCTED ON THIS MATTER ON JULY 31, 2020, AT 7:30 A.M. (CENTRAL TIME) IN COURTROOM 400, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TEXAS 77002.  IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING.  OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

RELIEF IS REQUESTED NOT LATER THAN JULY 31, 2020.

PLEASE NOTE THAT ON MARCH 24, 2020, THROUGH THE ENTRY OF GENERAL ORDER 2020-10, THE COURT INVOKED THE PROTOCOL FOR EMERGENCY PUBLIC HEALTH OR SAFETY CONDITIONS.

IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.

AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S REGULAR DIAL-IN NUMBER. THE DIAL-IN NUMBER IS +1(832) 917-1510.  YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES.  YOU WILL BE ASKED TO KEY IN THE CONFERENCE ROOM NUMBER.  JUDGE JONES'S CONFERENCE ROOM NUMBER IS 205691.

PARTIES MAY PARTICIPATE IN ELECTRONIC HEARINGS BY USE OF AN INTERNET CONNECTION.  THE INTERNET SITE IS WWW.JOIN.ME.  PERSONS CONNECTING BY

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Denbury Resources Inc. (7835); Denbury Air, LLC (7621); Denbury Brookhaven Pipeline Partnership, LP (6322); Denbury Brookhaven Pipeline, LLC (6471); Denbury Gathering & Marketing, Inc. (6150); Denbury Green Pipeline-Montana, LLC (6443); Denbury Green Pipeline-North Dakota, LLC (7725); Denbury Green Pipeline-Riley Ridge, LLC (2859); Denbury Green Pipeline-Texas, LLC (2301); Denbury Gulf Coast Pipelines, LLC (0892); Denbury Holdings, Inc. (1216); Denbury Onshore, LLC (7798); Denbury Operating Company (7620); Denbury Pipeline Holdings, LLC (0190); Denbury Thompson Pipeline, LLC (0976); Encore Partners GP Holdings, LLC (N/A); Greencore Pipeline Company, LLC (9605); Plain Energy Holdings, LLC (0543).  The location of Debtor Denbury Resources Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 5320 Legacy Drive, Plano, Texas 75024.

**MOBILE DEVICE WILL NEED TO DOWNLOAD THE FREE JOIN.ME APPLICATION.**

**ONCE CONNECTED TO WWW.JOIN.ME, A PARTICIPANT MUST SELECT "JOIN A MEETING".   THE CODE FOR JOINING THIS HEARING BEFORE JUDGE JONES IS "JUDGEJONES".  THE NEXT SCREEN WILL HAVE A PLACE FOR THE PARTICIPANT'S NAME IN THE LOWER LEFT CORNER.  PLEASE COMPLETE THE NAME AND CLICK "NOTIFY".**

**HEARING APPEARANCES SHOULD BE MADE ELECTRONICALLY AND IN ADVANCE OF THE HEARING.  YOU MAY MAKE YOUR ELECTRONIC APPEARANCE BY:**

**1) GOING TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE;**

**2) SELECTING "BANKRUPTCY COURT" FROM THE TOP MENU;**

**3) SELECTING "JUDGES' PROCEDURES AND SCHEDULES";**

**4) SELECTING "VIEW HOME PAGE" FOR JUDGE JONES;**

**5) UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE;"**

**6) SELECT "DENBURY RESOURCES INC., ET AL." FROM THE LIST OF ELECTRONIC APPEARANCE LINKS; AND**

**7) AFTER SELECTING DENBURY RESOURCES INC., ET AL. FROM THE LIST, COMPLETE THE REQUIRED FIELDS AND HIT THE "SUBMIT" BUTTON AT THE BOTTOM OF THE PAGE.**

**SUBMITTING YOUR APPEARANCE ELECTRONICALLY IN ADVANCE OF THE HEARING WILL NEGATE THE NEED TO MAKE AN APPEARANCE ON THE RECORD AT THE HEARING.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion (this "Motion"):

## Relief Requested

1.      The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"):  (a) authorizing the Debtors to maintain, renew, amend, extend, supplement, and modify their Surety Bond Program—including the procurement of new surety bonds—in the ordinary course of business on a postpetition basis and pay outstanding prepetition amounts, if any, as of the Petition Date; and (b) granting related relief.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core

proceeding pursuant to 28 U.S.C. § 157 (b). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 363, 364, and 1107 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Bankruptcy Rules 6003 and 6004, and rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

5. On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Christian S. Kendall, Chief Executive Officer of Denbury Resources Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with this Motion and incorporated by reference herein.

6. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

## The Surety Bond Program

7. In the ordinary course of business, the Debtors are required by certain statutes or ordinances to provide surety bonds or other forms of credit support to certain third parties, often governmental units or other public agencies, to secure the payment or performance of certain

obligations (each, a "Surety Bond" and, collectively, the "Surety Bonds").  These obligations include, among others, conservation and environmental bonds, general performance obligation bonds, reclamation bonds, lease or land use bonds, supersedeas bonds, and bonds guaranteeing plugging and abandonment commitments.

8.     When a governmental unit, public agency, or other third party requests a form of security with respect to payment or performance by the Debtors of certain obligations, the Debtors may determine in their business judgment that posting a Surety Bond is preferable to providing cash and cash equivalents on hand to satisfy such request, the Debtors may post a Surety Bond. The Debtors' sureties, Liberty Mutual Insurance Company ("Liberty Mutual"), Safeco Insurance Company of America ("Safeco"), and RLI Insurance Company ("RLI" and, together with Liberty Mutual and Safeco, collectively, the "Sureties"), provide, upfront, an instrument in the full amount of the requested security to the requesting party on behalf of the Debtors, in exchange for, among other things, a fee from the Debtors to secure the Surety Bond issuance on the Debtors' behalf. The issuance of a Surety Bond shifts the risk of the Debtors' nonperformance or nonpayment from the obligee to the Surety.

9.     As of the Petition Date, the Debtors have approximately 66 Surety Bonds outstanding, which provide approximately $42 million in aggregate Surety Bond coverage for facilities and assets leased, owned, or operated by the Debtors.[2]  A schedule of the Surety Bonds

---

[2]     The Debtors are in the process of converting the issuer from Safeco to Liberty Mutual and obtaining name change riders for five Surety Bonds that are in the name of a predecessor entity, Encore Operating L.P. (bond numbers 6190510, 6197822, 6449762, 6449774, 103615079).

currently maintained by the Debtors is attached hereto as **Exhibit 1** to the Order and incorporated herein by reference.[3]

10.     In consideration for the Sureties' issuance of the Surety Bonds, the Debtors pay premiums to the Sureties.  The premiums for the Surety Bonds generally are determined on an annual basis and are paid by the Debtors when the Surety Bonds are issued and annually in advance of renewal.  In the twelve months preceding the Petition Date, the premiums for the Surety Bonds totaled approximately $500,000.00.  In the aggregate, the Debtors have provided Liberty Mutual with cash collateral in the amount of $5 million and RLI with a $15,475,500 letter of credit in support of the Surety Bonds.  As of the Petition Date, the Debtors do not believe that there are unpaid prepetition obligations due and owing in connection with the Surety Bond premiums.  Out of an abundance of caution, the Debtors request authority to pay any prepetition amounts, continue the Surety Bonds, obtain new Surety Bonds in the ordinary course of business on a postpetition basis, and renew the Surety Bonds.

11.     Further, certain of the Debtors are party to indemnity agreements (each, a "Surety Indemnity Agreement" and, collectively, the "Surety Indemnity Agreements" and, together with the Surety Bonds, the "Surety Bond Program") with RLI Insurance Company and Liberty Mutual Insurance Company.  Pursuant to the Surety Indemnity Agreements, the Debtors agree to indemnify the Sureties from any loss, cost, or expense that such Surety may incur on account of the issuance of any bonds on behalf of the Debtors.  The Debtors request authority to pay any prepetition amount due and owing in connection with the Surety Indemnity Agreements and continue paying amounts, including posting new collateral as required by the Sureties, owed

---

[3]     To the extent that the Debtors inadvertently omitted any Surety Bonds from **Exhibit 1** to the Order, the Debtors request that any relief granted under this Motion apply to all Surety Bonds, regardless of whether any such Surety Bond is specifically identified on **Exhibit 1** to the Order.

in connection with the Surety Indemnity Agreements as they come due in the ordinary course of business on a postpetition basis.

12.     The Debtors must maintain the Surety Bond Program to provide financial assurance to state governments, regulatory agencies, and certain other third parties to continue operations during this restructuring.   Maintaining the Surety Bond Program entails paying Surety Bond premiums as they come due, providing the Sureties with collateral, renewing or potentially acquiring additional Surety Bonds as needed in the ordinary course of business, and executing related agreements, as appropriate.   Failure to maintain, renew, or timely replace Surety Bonds likely would prevent the Debtors from undertaking essential functions related to their operations and could result in a forced cessation of their operations.

### The Debtors' Surety Bond Brokers

13.     The Debtors obtain Surety Bonds primarily through their Surety Bond broker, Lockton Companies ("Lockton"), and any wholesale brokers used in connection with the procurement of such Surety Bonds (collectively, the "Brokers").   The Brokers assist the Debtors in obtaining comprehensive Surety Bond coverage for their operations in the most cost-effective manner, negotiating Surety Bond terms, provisions, and premiums, and providing ongoing support throughout the applicable bonding periods.   Lockton does not collect a separate fee from the Debtors for services rendered, but retains a portion of the premiums paid on account of the Surety Bonds (the "Brokerage Fees").   Out of an abundance of caution, the Debtors request authority to pay any prepetition amounts due and owing in connection with the Brokerage Fees and continue paying the Brokerage Fees as they come due in the ordinary course of business on a postpetition basis.

**Basis for Relief**

I.    **The Surety Bond Program Is Maintained in the Ordinary Course of the Debtors'
      Business.**

14.    Pursuant to section 363(c)(1) of the Bankruptcy Code, a debtor in possession may
"enter into transactions . . . in the ordinary course of business, without notice or a hearing, and may
use property of the estate in the ordinary course of business without notice or a hearing."
11 U.S.C. § 363(c)(1).   The Bankruptcy Code does not define "ordinary course of business."
Courts in the Fifth Circuit apply a two-part test to determine whether a transaction is in the ordinary
course of a debtor's business.   The test analyzes the transaction on both a horizontal and a vertical
basis—the horizontal inquiry focuses on whether the transaction is common to the debtor's
industry, and the vertical inquiry focuses on comparing the proposed transaction to the debtor's
prepetition practices.   *See, e.g.*, *In re Patriot Place, Ltd.*, 486 B.R. 773, 793 (Bankr. W.D. Tex.
2013) ("[U]nder the vertical test, courts look at whether the transaction subjects a hypothetical
creditor to a different economic risk than existed when the creditor originally extended the credit.
Under the horizontal test, in general courts look at whether the transaction was of the sort
commonly undertaken by companies in the industry.   The primary focus is on the debtor's
pre-petition practices and conduct."); *In re Cowin*, No. 13-30984, 2014 WL 1168714, at *41–43
(Bankr. S.D. Tex. Mar. 21, 2014) (applying the "horizontal" and "vertical" prongs of the test).

15.    Here, continuance of the Surety Bond Program is consistent with the Debtors'
prepetition practice and common among companies in the exploration and production industry.
As a result, creditors will not be subjected to unexpected or different economic risks than existed
when the creditors originally extended the credit.   Accordingly, the Debtors submit that
continuation of the Surety Bond Program is an ordinary course transaction and should be
authorized on a postpetition basis.

16.     The Debtors believe they are authorized, without further order of the Court, to honor their obligations and perform in the ordinary course of business on a postpetition basis pursuant to section 363(c)(1) of the Bankruptcy Code.  This includes, among other things, maintaining existing Surety Bonds, renewing Surety Bonds as they expire, obtaining issuance by the Sureties for new Surety Bonds as needed in the ordinary course of business, posting new or additional collateral or issuing letters of credit, and paying applicable Surety Bond premiums, amounts arising under the Surety Indemnity Agreements, and Brokerage Fees.  Accordingly, the Debtors respectfully submit that they may continue the Surety Bond Program in the ordinary course of business on a postpetition basis.

## II.     The Court Should Authorize the Debtors to Continue the Surety Bond Program in Accordance with Prepetition Practice Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code.

17.     Section 363(b) of the Bankruptcy Code permits a debtor, subject to court approval, to pay prepetition obligations where a sound business purpose exists for doing so.  *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (noting that section 363(b) of the Bankruptcy Code provides "broad flexibility" to authorize a debtor to use property of the estate outside of the ordinary course of business where supported by an appropriate business justification).  In addition, under section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going-concern value.'"  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)).  Moreover, under section 105(a) of the Bankruptcy Code, "the Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code."  11 U.S.C. § 105(a); *see also In re CoServ,* 273 B.R. at 497 (holding that the "Court has inherent authority, through section 105(a) of the Bankruptcy Code to grant this Motion, in the

interest of preservation of Debtors' bankruptcy estate."); *In re Mirant Corp.*, 296 B.R. 427, 429 (Bankr. N.D. Tex. 2003) (noting that non-payment of prepetition claims may seriously damage a debtor's business).

18.     To the extent that section 363(b) of the Bankruptcy Code is applicable to the relief requested in this Motion, the Debtors respectfully request the Court authorize the Debtors to continue the Surety Bond Program.  This includes, among other things, maintaining existing Surety Bonds, renewing Surety Bonds as they expire, obtaining issuance by the Sureties for Surety Bonds as needed in the ordinary course of business, posting new or additional collateral or issuing letters of credit, and paying applicable Surety Bond premiums, amounts arising under the Surety Indemnity Agreements, and Brokerage Fees.  As noted above, certain Surety Bonds are required by statute, and in other instances, Surety Bonds may be required by contract or regulation.  The Debtors' failure to maintain, renew, or provide the Surety Bonds may therefore jeopardize the Debtors' ability to operate.

19.     Continuing the Surety Bond Program is, therefore, necessary to maintain the Debtors' current business operations, as well as the Debtors' existing relationships with the Sureties.  Based on the Debtors' current circumstances, it is not likely the Debtors will be able to renew or replace existing Surety Bonds on terms more favorable than those offered by the Sureties. The process of establishing a new Surety Bond Program, moreover, would be burdensome to the Debtors, and it is doubtful the Debtors could replace all of the Surety Bonds in time to avoid defaults or other consequences of the applicable obligations.

20.     Accordingly, the Debtors respectfully submit that continuing the Surety Bond Program should be authorized under sections 105(a) and 363(b) of the Bankruptcy Code to the extent such continuation is deemed to be outside the ordinary course of the Debtors' businesses.

**III.    To the Extent the Court Determines that the Surety Bond Program is an Extension of Credit, Relief is Appropriate under Section 364 of the Bankruptcy Code.**

21.     Under section 364(c) of the Bankruptcy Code, a debtor may obtain unsecured credit in the ordinary course of business or obtain secured credit (a) with priority over administrative expenses, (b) secured by a lien on unencumbered estate assets, or (c) secured by a junior lien on previously encumbered assets.  11 U.S.C. § 364(c).  To satisfy the requirements of section 364(c) of the Bankruptcy Code, a debtor need only demonstrate "by a good faith effort that credit was not available" to the debtor on an unsecured or administrative expense basis.  *Bray v. Shenandoah Fed. Savs. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986).  Given the Debtors' current financial circumstances, the Debtors may not be able to obtain financial accommodations on an unsecured basis or administrative expense basis comparable to those offered by the Sureties.  To the extent a Surety Bond is deemed an extension of credit, or the Debtors are required to post new or additional collateral or issue letters of credit in connection therewith, section 364 of the Bankruptcy Code provides the Debtors ample authority to renew existing Surety Bonds, and procure the issuance of new Surety Bonds, whether on an unsecured basis or, if necessary, on a secured basis.

22.     Continuing the Surety Bond Program is necessary to maintain the Debtors' current business operations.  As described above, the Debtors are required to provide Surety Bonds or other forms of credit support to certain third parties, often governmental units or other public agencies, to secure the payment or performance of certain obligations.  The Debtors therefore seek authority to furnish the Sureties (or any new provider of Surety Bonds) with collateral or new forms of credit support with respect to the Debtors' existing Surety Bonds, Surety Bond renewals, or any new Surety Bonds issued after the Petition Date.

## Emergency Consideration

23.     Pursuant to Bankruptcy Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." The Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. The failure to receive the requested relief during the first 21 days of these chapter 11 cases could disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring because failure to maintain, renew, or timely replace Surety Bonds likely would prevent the Debtors from undertaking essential functions related to their operations and could result in a forced cessation of their operations. The Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested herein on an emergency basis.

## Processing of Checks and Electronic Fund Transfers Should Be Authorized

24.     The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral. Under the Debtors' existing cash management system, the Debtors have made arrangements to readily identify checks or wire transfer requests relating to the Surety Bond Program as applicable. Accordingly, the Debtors believe that checks or wire transfer requests that are not related to authorized payments will not be honored inadvertently. The Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested herein.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

25.     To implement the foregoing successfully, the Debtors request the Court enter an

order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and

that the Debtors have established cause to exclude such relief from the 14-day stay period under

Bankruptcy Rule 6004(h).

**Reservation of Rights**

26.     Nothing contained herein or any actions taken by the Debtors pursuant to any order

granting the relief requested by this Motion is intended or should be construed as:  (a) an admission

as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver

of the Debtors' right to dispute any particular claim on any grounds; (c) a promise or requirement

to pay any particular claim; (d) an implication or admission that any particular claim is of a type

specified or defined herein or any order granting the relief requested by this Motion; (e) a request

or authorization to assume any agreement, contract, or lease pursuant to section 365 of the

Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or

any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any

liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid

and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent,

validity, or perfection, or to seek avoidance of all such liens.  If the Court grants the relief sought

herein, any payment made pursuant to the Court's order is not intended and should not be construed

as an admission as to the validity, priority, or amount of any particular claim or a waiver of the

Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

**Notice**

27.     Notice of the hearing on the relief requested in this Motion will be provided by the

Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the

Bankruptcy Local Rules, and is sufficient under the circumstances.  Without limiting the foregoing, due notice will be afforded, whether by facsimile, electronic mail, overnight courier or hand delivery, to parties-in-interest, including:  (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) JPMorgan Chase Bank, N.A., as administrative agent under the Debtors' revolving credit facility; (d) Vinson & Elkins LLP, as counsel to the administrative agent under the Debtors' revolving credit facility; (e) Wilmington Trust, N.A., as indenture trustee under the Debtors' (i) 9.00% second lien secured notes due 2021, (ii) 9.250% second lien secured notes due 2022, (iii) 7.50% second lien secured notes due 2024, (iv) 7.750% second lien secured notes due 2024, and (v) 6.375% convertible notes due 2024; (f) Wilmington Trust, N.A., as successor indenture trustee under the Debtors' (i) 6.375% subordinated notes due 2021, (ii) 4.625% subordinated notes due 2023, and (iii) 5.50% subordinated notes due 2022; (g) Paul, Weiss, Rifkind, Wharton & Garrison LLP, as counsel to the ad hoc committee of second lien bondholders; (h) Akin Gump Strauss Hauer & Feld LLP, as counsel to the ad hoc group of convertible bondholders; (i) the United States Attorney's Office for the Southern District of Texas; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (m) the state attorneys general for states in which the Debtors conduct business; (n) the Sureties; (o) the Brokers; and (p) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
July 30, 2020

*/s/ Matthew D. Cavenaugh*

**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Vienna F. Anaya (TX Bar No. 24091225)
Victoria Argeroplos (TX Bar No. 24105799)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:     (713) 752-4200
Facsimile:      (713) 752-4221
Email:          mcavenaugh@jw.com
                vanaya@jw.com
                vargeroplos@jw.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
Christopher J. Marcus, P.C. (*pro hac vice* admission pending)
Rebecca Blake Chaikin (*pro hac vice* admission pending)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com
                christopher.marcus@kirkland.com
                rebecca.chaikin@kirkland.com

-and-

David L. Eaton (*pro hac vice* admission pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:          david.eaton@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Local Rule 9013-1(i).

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh

**Certificate of Service**

I certify that on July 30, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh