## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| DENBURY RESOURCES INC., *et al.*,[1] | ) | Case No. 20-33801 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) | (Emergency Hearing Requested) |

## DEBTORS' <u>EMERGENCY</u> MOTION FOR
## ENTRY OF AN ORDER (I) AUTHORIZING THE
## DEBTORS TO (A) CONTINUE INSURANCE COVERAGE ENTERED
## INTO PREPETITION AND SATISFY PREPETITION OBLIGATIONS
## RELATED THERETO, (B) RENEW, AMEND, SUPPLEMENT, EXTEND,
## OR PURCHASE INSURANCE POLICIES, AND (II) GRANTING RELATED RELIEF

> **EMERGENCY RELIEF HAS BEEN REQUESTED.  A HEARING WILL BE CONDUCTED ON THIS MATTER ON JULY 31, 2020, AT 7:30 A.M. (CENTRAL TIME) IN COURTROOM 400, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TEXAS 77002.  IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING.  OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **RELIEF IS REQUESTED NOT LATER THAN JULY 31, 2020**
>
> **PLEASE NOTE THAT ON MARCH 24, 2020, THROUGH THE ENTRY OF GENERAL ORDER 2020-10, THE COURT INVOKED THE PROTOCOL FOR EMERGENCY PUBLIC HEALTH OR SAFETY CONDITIONS.**
>
> **IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.**
>
> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S REGULAR DIAL-IN NUMBER.  THE DIAL-IN NUMBER IS +1(832) 917-1510.  YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES.  YOU WILL BE ASKED TO KEY IN THE CONFERENCE ROOM NUMBER.  JUDGE JONES'S CONFERENCE ROOM NUMBER IS 205691.**
>
> **PARTIES MAY PARTICIPATE IN ELECTRONIC HEARINGS BY USE OF AN INTERNET CONNECTION.  THE INTERNET SITE IS WWW.JOIN.ME.  PERSONS CONNECTING BY MOBILE DEVICE WILL NEED TO DOWNLOAD THE FREE JOIN.ME APPLICATION.**

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Denbury Resources Inc. (7835); Denbury Air, LLC (7621); Denbury Brookhaven Pipeline Partnership, LP (6322); Denbury Brookhaven Pipeline, LLC (6471); Denbury Gathering & Marketing, Inc. (6150); Denbury Green Pipeline-Montana, LLC (6443); Denbury Green Pipeline-North Dakota, LLC (7725); Denbury Green Pipeline-Riley Ridge, LLC (2859); Denbury Green Pipeline-Texas, LLC (2301); Denbury Gulf Coast Pipelines, LLC (0892); Denbury Holdings, Inc. (1216); Denbury Onshore, LLC (7798); Denbury Operating Company (7620); Denbury Pipeline Holdings, LLC (0190); Denbury Thompson Pipeline, LLC (0976); Encore Partners GP Holdings, LLC (N/A); Greencore Pipeline Company, LLC (9605); Plain Energy Holdings, LLC (0543).  The location of Debtor Denbury Resources Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 5320 Legacy Drive, Plano, Texas 75024.

ONCE CONNECTED TO WWW.JOIN.ME, A PARTICIPANT MUST SELECT "JOIN A MEETING".   THE CODE FOR JOINING THIS HEARING BEFORE JUDGE JONES IS "JUDGEJONES".  THE NEXT SCREEN WILL HAVE A PLACE FOR THE PARTICIPANT'S NAME IN THE LOWER LEFT CORNER.  PLEASE COMPLETE THE NAME AND CLICK "NOTIFY".

HEARING APPEARANCES SHOULD BE MADE ELECTRONICALLY AND IN ADVANCE OF THE HEARING.  YOU MAY MAKE YOUR ELECTRONIC APPEARANCE BY:

1) GOING TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE;

2) SELECTING "BANKRUPTCY COURT" FROM THE TOP MENU;

3) SELECTING "JUDGES' PROCEDURES & SCHEDULES;"

4) SELECTING "VIEW HOME PAGE" FOR JUDGE JONES;

5) UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE;"

6) SELECT "DENBURY RESOURCES INC., ET AL." FROM THE LIST OF ELECTRONIC APPEARANCE LINKS; AND

7) AFTER SELECTING DENBURY RESOURCES INC., ET AL. FROM THE LIST, COMPLETE THE REQUIRED FIELDS AND HIT THE "SUBMIT" BUTTON AT THE BOTTOM OF THE PAGE.

SUBMITTING YOUR APPEARANCE ELECTRONICALLY IN ADVANCE OF THE HEARING WILL NEGATE THE NEED TO MAKE AN APPEARANCE ON THE RECORD AT THE HEARING.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):

## Relief Requested

1.      The Debtors seek entry of an order (the "Order"), substantially in the form attached hereto:  (a) authorizing the Debtors to (i) continue insurance coverage entered into prepetition and satisfy prepetition obligations related thereto, and (ii) renew, amend, supplement, extend, or purchase insurance policies in the ordinary course of business on a postpetition basis; and (b) granting related relief.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157 (b).  The Debtors confirm their consent, pursuant to

rule 7008 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), to the entry of a final order by the Court.

3.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 363(b), 364(c) and 1107 of chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Bankruptcy Rules 6003 and 6004, and rules 4002-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "<u>Bankruptcy Local Rules</u>").

5.      On the date hereof (the "<u>Petition Date</u>"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Christian S. Kendall, Chief Executive Officer of Denbury Resources Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "<u>First Day Declaration</u>"), filed contemporaneously with this Motion and incorporated by reference herein.

6.      The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

<b><u>The Insurance Policies and Related Payment Obligations</u></b>

7.      In the ordinary course of business, the Debtors maintain approximately twenty-four (24) insurance policies that are administered by various third-party insurance carriers (collectively, the "<u>Insurance Carriers</u>").  These policies provide coverage for both general commercial business risks and risks specific to the exploration and production industry,

3

including, but not limited to, coverage for the Debtors' general liability, directors' and officers' liability, employment liability, automobile liability, environmental liability, various control of well policies, and property liability (each, an "Insurance Policy" and collectively, the "Insurance Policies").  A schedule of the Insurance Policies is attached hereto as **Exhibit 1** to the Order.[2]

8.        Continuation of the Insurance Policies and entry into new insurance policies is essential to the preservation of the value of the Debtors' businesses and operations.  In many instances, insurance coverage is required by the regulations, laws, certain credit agreements, and contracts that govern the Debtors' commercial activities, including the requirement by the U.S. Trustee for the Southern District of Texas (the "U.S. Trustee") that a debtor maintain adequate coverage given the circumstances of its chapter 11 case.  Accordingly, the Debtors seek authorization to maintain their existing Insurance Policies, pay any prepetition obligations related thereto, and to renew, supplement, amend, extend, or enter into new insurance policies in the ordinary course of business on a postpetition basis.

I.        **Premium Payments.**

9.        The aggregate annual premium for the Insurance Policies is approximately $6,940,000 (the "Insurance Premiums"), excluding applicable taxes and surcharges, deductibles, brokerage and consulting fees, and commissions.  The Insurance Policies generally are one year

---

[2]     The descriptions of the Insurance Policies set forth in this Motion, including on **Exhibit 1** to the Order, only constitute a summary.  The actual terms of the Insurance Policies and related agreements will govern in the event of any inconsistency with the description in this Motion.  The Debtors request authority to honor obligations and renew all insurance policies, as applicable, regardless of whether the Debtors inadvertently fail to include a particular insurance policy on **Exhibit 1**, and any such omitted insurance policy is hereby included in the defined term "Insurance Policies" as used herein and in the order.  Moreover, and in addition to the Insurance Policies listed on **Exhibit 1**, the Debtors maintain numerous insurance policies with respect to, among other things, workers' compensation, employee health, disability, and life insurance benefits.  These programs are described, and relief is requested with respect to such programs, in the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses, and (B) Continue Employee Benefits Programs and (II) Granting Related Relief*, filed contemporaneously herewith.

in length (although certain policies may be longer than one year based on market conditions and availability at the time) and renew predominately in April and September of each year. The Debtors generally pay the Insurance Premiums annually; however, Insurance Premiums with respect to coverage for certain operations and office property contents are paid on a quarterly basis based, in part, on quarterly reporting of actual drilling and workover activity (the "Energy Package"). The Energy Package is invoiced at the time of such quarterly reports.

10. As of the Petition Date, the Debtors estimate that there are no accrued but unpaid obligations on account of the Insurance Premiums. Out of an abundance of caution, the Debtors seek authority to pay any prepetition amounts due and owing on account of the Insurance Policies and to continue honoring all payment obligations under the Insurance Policies in the ordinary course of business to ensure uninterrupted coverage thereunder.

**II.    Deductibles.**

11. Some of the Insurance Policies require the Debtors to pay a per-incident deductible (collectively, the "Deductibles"). Generally, if a claim is made against the Insurance Policies, the Debtors' applicable Insurance Carrier will administer the claim and make payments in connection therewith. The Deductible, if any, is offset against such payments. Alternatively, certain of the Debtors' policies use self-insured retentions ("SIR") instead of Deductibles. If a claim is made under such policies, the Debtors make payments up to the limit of the SIR and the applicable Insurance Policy covers costs above the value of the SIR amount. There is significant variation in the amount of Deductibles and SIRs, which range from $25,000 up to $3.75 million. The Debtors seek authority, but not direction, to honor any SIRs or Deductibles that may

currently exist or arise under the Insurance Policies in the ordinary course of business to ensure uninterrupted coverage under the Insurance Policies.[3]

## III.    Brokerage Fees.

12.    The Debtors obtain D&O related Insurance Policies through Lockton Companies Inc. and all remaining Insurance Policies through their insurance broker, Marsh LLC, and any wholesale brokers used in connection with the procurement of such Insurance Policies (collectively, the "Brokers").  The Brokers assist the Debtors in obtaining comprehensive insurance coverage for their operations in the most cost-effective manner, negotiating policy terms, provisions, and premiums, assisting the Debtors with claims, and providing ongoing support throughout the applicable policy periods.  The Brokers collect commission payments for services rendered in addition to or as part of the premiums paid on the Insurance Policies, and Marsh LLC earns an additional annual fee of $150,000 paid in quarterly installments (the "Brokerage Fees").  As of the Petition Date, there are two remaining quarterly instalments of $37,500 owed to Marsh LLC on account of Brokerage Fees due on August 1, 2020 and November 1, 2020.  The Debtors seek authority, but not direction, to pay all prepetition amounts due and owing on account of Brokerage Fees in full, in cash to ensure uninterrupted coverage under their Insurance Policies.

## Basis for Relief

## I.    Continuation of the Insurance Policies Is Required by the Bankruptcy Code and U.S. Trustee Operating Guidelines.

13.    Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case.  11 U.S.C. § 1112(b)(4)(C).  In addition, in many

---

[3]    To the extent the Debtors assert a claim under an expired or renewed insurance policy, the Debtors will pay any Deductibles or SIRs based on the policy in place at the time the claim arose.

instances, the coverage provided under the Insurance Policies is required by the regulations, laws, certain credit agreements, and contracts that govern the Debtors' commercial activities, including the operating guidelines issued by the United States Trustee for Region 7 (the "U.S. Trustee Operating Guidelines").   Given this backdrop, the Debtors believe it is essential to their estates, and consistent with the Bankruptcy Code and the U.S. Trustee Operating Guidelines, that they (a) maintain, and continue to make all payments required under, their Insurance Policies and (b) have the authority to supplement, amend, extend, renew, or replace their Insurance Policies as needed, in the ordinary course of business, without further order of the Court.[4]

## II.     Renewing, Supplementing, Purchasing, or Entering Into New Policies, and Paying Obligations Related to the Insurance Policies in the Ordinary Course of Business Are Each Warranted.

14.     As stated above, the Debtors are not aware of any outstanding prepetition obligations related to the Insurance Policies or Brokerage Fees.   Out of an abundance of caution and given the importance of the Insurance Policies to the continued operation of the Debtors' businesses, however, the Debtors request authority to pay any prepetition amounts due on account of the Insurance Policies, including any Deductibles or SIRs, or the Brokerage Fees.

15.     Courts in the Fifth Circuit recognize that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value.   *See, e.g.*, *In re CoServ*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when

---

[4]     The Debtors believe that continuation of the Insurance Policies and the ability to supplement, amend, extend, renew, or replace such Insurance Policies is authorized in the ordinary course.   11 U.S.C. § 363(c)(1). The Debtors therefore seek such relief out of an abundance of caution given the importance of the Insurance Policies to the protection of their estates.

such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept.");
*Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R.
391, 398 (S.D.N.Y. 1983) (affirming bankruptcy court order authorizing payments by debtor in
possession to prepetition creditors because payments were essential to the debtor in possession's
survival).  In doing so, these courts acknowledge that several legal theories rooted in sections
105(a), 363(b), and 1107(a) of the Bankruptcy Code support the payment of prepetition claims as
provided herein.

16.    Section 363(b) of the Bankruptcy Code permits a debtor, subject to court
approval, to pay prepetition obligations where a sound business purpose exists for doing
so.  *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) of the Bankruptcy Code
provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by
an appropriate business justification).  In addition, under section 1107(a) of the Bankruptcy
Code, a debtor in possession has, among other things, the "implied duty of the debtor-in-
possession to 'protect and preserve the estate, including an operating business' going-concern
value.'"  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004)
(quoting *In re CoServ*, 273 B.R. at 497).

17.    Under section 105(a) of the Bankruptcy Code, "the Court may issue any order,
process, or judgment that is necessary or appropriate to carry out the provisions of the
Bankruptcy Code."  11 U.S.C. § 105(a).  The Court's power under section 105(a) to authorize
payment of prepetition obligations is popularly referred to as the "necessity of payment" rule
(also referred to as the "doctrine of necessity") and has long been recognized as precedent within
the Fifth Circuit.  *See CoServ*, 273 B.R. at 492–93.  Today, the rationale for the necessity of
payment rule—the rehabilitation of a debtor in reorganization cases—is the paramount policy
and goal of chapter 11.  *See id.* at 497 (finding that, where claims require satisfaction for the

debtor in possession to perform its obligations, the bankruptcy court is able to use section 105 of the Bankruptcy Code to authorize satisfaction of prepetition claims in aid of preservation or enhancement of the estate); s*ee also In re Scotia Development,* LLC, No. 07-20027 (RS), 2007 WL 2788840 at *1 (Bankr. S.D. Tex. Sept. 21, 2007); *In re Mirant Corp.*, 296 B.R. 427, 429 (Bankr. N.D. Tex. 2003) (noting that non-payment of prepetition claims may seriously damage a debtor's business); 2 COLLIER ON BANKRUPTCY, 105.02[4][a] (16th ed. rev. 2015) (discussing cases in which courts have relied on the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately).  Satisfying possible outstanding or future obligations related to the Insurance Policies and the Brokerage Fees is warranted under the doctrine of necessity.[5]

18.     The Debtors seek to continue, renew, amend, supplement, and extend their existing Insurance Policies, and purchase new policies in the ordinary course of business on a postpetition basis.  Related to that process, the Debtors believe that failure to timely honor any outstanding prepetition obligations on account of the Insurance Policies could negatively affect the Debtors' ability to enter into such amendments, supplements, extensions, or new policies. Moreover, as described above, continuation of the Insurance Policies is essential to preserving the value of the Debtors' assets and minimizing exposure to risk during the pendency of these chapter 11 cases.

## Emergency Consideration

19.     The Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and

---

[5]     Although the Debtors do not believe there are any amounts outstanding as of the Petition Date, to the extent any such obligations exist, the Debtors submit it would be within their sound business judgment to pay those obligations.

irreparable harm."  An immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  The failure to receive the requested relief during the first 21 days of these chapter 11 cases could disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring because maintenance of Insurance Policies is a necessary condition for financing and continued operations under the Debtors' debt obligations and applicable law.  The Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested herein on an emergency basis.

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

20.     The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral.  Under the Debtors' existing cash management system, the Debtors have made arrangements to readily identify checks or wire transfer requests relating to the Insurance Policies, as applicable.  Accordingly, the Debtors believe that checks or wire transfer requests that are not related to authorized payments will not be honored inadvertently. The Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested herein.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

21.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**Reservation of Rights**

22.     Nothing contained herein or any actions taken by the Debtors pursuant to any order granting the relief requested by this Motion is intended or should be construed as:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined herein or any order granting the relief requested by this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law;  or  (g) a concession  by  the  Debtors  or  any  other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

**Notice**

23.     Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Bankruptcy Local Rules, and is sufficient under the circumstances.   Without limiting the foregoing, due notice will be afforded, whether by facsimile, electronic mail, overnight courier or hand delivery, to parties-in-interest, including:  (a) the U.S. Trustee for the Southern District of Texas;  (b) the  holders  of  the  30  largest  unsecured  claims  against  the  Debtors  (on  a

consolidated basis); (c) JPMorgan Chase Bank, N.A., as administrative agent under the Debtors' revolving credit facility; (d) Vinson & Elkins LLP, as counsel to the administrative agent under the Debtors' revolving credit facility; (e) Wilmington Trust, N.A., as indenture trustee under the Debtors' (i) 9.00% second lien secured notes due 2021, (ii) 9.250% second lien secured notes due 2022, (iii) 7.50% second lien secured notes due 2024, (iv) 7.750% second lien secured notes due 2024, and (v) 6.375% convertible notes due 2024; (f) Wilmington Trust, N.A., as successor indenture trustee under the Debtors' (i) 6.375% subordinated notes due 2021, (ii) 4.625% subordinated notes due 2023, and (iii) 5.50% subordinated notes due 2022; (g) Paul, Weiss, Rifkind, Wharton & Garrison LLP, as counsel to the ad hoc committee of second lien bondholders; (h) Akin Gump Strauss Hauer & Feld LLP, as counsel to the ad hoc group of convertible bondholders; (i) the United States Attorney's Office for the Southern District of Texas; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (m) the state attorneys general for states in which the Debtors conduct business; (n) the Brokers; (o) the Insurance Carriers; and (p) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors request that the Court enter an order, substantially in the form attached hereto, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Houston, Texas
July 30, 2020

/s/ *Vienna F. Anaya*

**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Vienna F. Anaya (TX Bar No. 24091225)
Victoria Argeroplos (TX Bar No. 24105799)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:     (713) 752-4200
Facsimile:     (713) 752-4221
Email:      mcavenaugh@jw.com
            vanaya@jw.com
            vargeroplos@jw.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
Christopher J. Marcus, P.C. (*pro hac vice* admission pending)
Rebecca Blake Chaikin (*pro hac vice* admission pending)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:      joshua.sussberg@kirkland.com
            christopher.marcus@kirkland.com
            rebecca.chaikin@kirkland.com

-and-

David L. Eaton (*pro hac vice* admission pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:      david.eaton@kirkland.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

**<u>Certificate of Accuracy</u>**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Local Rule 9013-1(i).

*/s/ Vienna F. Anaya*
Vienna F. Anaya

**<u>Certificate of Service</u>**

I certify that on July 30, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Vienna F. Anaya*
Vienna F. Anaya