## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DENBURY RESOURCES INC., *et al.*,[1] | ) | Case No. 20-33801 (DRJ) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | (Emergency Hearing Requested) |

## DEBTORS' EMERGENCY MOTION
## FOR ENTRY OF AN ORDER (I) SCHEDULING A
## COMBINED DISCLOSURE STATEMENT APPROVAL
## AND PLAN CONFIRMATION HEARING, (II) CONDITIONALLY
## APPROVING THE DISCLOSURE STATEMENT, (III) ESTABLISHING
## PLAN AND DISCLOSURE STATEMENT OBJECTION AND RELATED
## PROCEDURES, (IV) APPROVING THE SOLICITATION PROCEDURES,
## (V) APPROVING THE COMBINED NOTICE, AND (VI) CONDITIONALLY
## WAIVING THE REQUIREMENTS THAT THE U.S. TRUSTEE CONVENE A
## MEETING OF CREDITORS AND THE DEBTORS FILE SCHEDULES AND SOFAS

---

**EMERGENCY RELIEF HAS BEEN REQUESTED.  A HEARING WILL BE CONDUCTED ON THIS MATTER ON JULY 31, 2020, AT 7:30 A.M. (CENTRAL TIME) IN COURTROOM 400, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TEXAS 77002.  IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING.  OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**RELIEF IS REQUESTED NOT LATER THAN JULY 31, 2020.**

**PLEASE NOTE THAT ON MARCH 24, 2020, THROUGH THE ENTRY OF GENERAL ORDER 2020-10, THE COURT INVOKED THE PROTOCOL FOR EMERGENCY PUBLIC HEALTH OR SAFETY CONDITIONS.**

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Denbury Resources Inc. (7835); Denbury Air, LLC (7621); Denbury Brookhaven Pipeline Partnership, LP (6322); Denbury Brookhaven Pipeline, LLC (6471); Denbury Gathering & Marketing, Inc. (6150); Denbury Green Pipeline-Montana, LLC (6443); Denbury Green Pipeline-North Dakota, LLC (7725); Denbury Green Pipeline-Riley Ridge, LLC (2859); Denbury Green Pipeline-Texas, LLC (2301); Denbury Gulf Coast Pipelines, LLC (0892); Denbury Holdings, Inc. (1216); Denbury Onshore, LLC (7798); Denbury Operating Company (7620); Denbury Pipeline Holdings, LLC (0190); Denbury Thompson Pipeline, LLC (0976); Encore Partners GP Holdings, LLC (N/A); Greencore Pipeline Company, LLC (9605); Plain Energy Holdings, LLC (0543).  The location of Debtor Denbury Resources Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 5320 Legacy Drive, Plano, Texas 75024.

> **IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.**
>
> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S REGULAR DIAL-IN NUMBER. THE DIAL-IN NUMBER IS +1(832) 917-1510.  YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES.  YOU WILL BE ASKED TO KEY IN THE CONFERENCE ROOM NUMBER.  JUDGE JONES'S CONFERENCE ROOM NUMBER IS 205691.**
>
> **PARTIES MAY PARTICIPATE IN ELECTRONIC HEARINGS BY USE OF AN INTERNET CONNECTION.  THE INTERNET SITE IS WWW.JOIN.ME.  PERSONS CONNECTING BY MOBILE DEVICE WILL NEED TO DOWNLOAD THE FREE JOIN.ME APPLICATION.**
>
> **ONCE CONNECTED TO WWW.JOIN.ME, A PARTICIPANT MUST SELECT "JOIN A MEETING".  THE CODE FOR JOINING THIS HEARING BEFORE JUDGE JONES IS "JUDGEJONES".  THE NEXT SCREEN WILL HAVE A PLACE FOR THE PARTICIPANT'S NAME IN THE LOWER LEFT CORNER.  PLEASE COMPLETE THE NAME AND CLICK "NOTIFY".**
>
> **HEARING APPEARANCES SHOULD BE MADE ELECTRONICALLY AND IN ADVANCE OF THE HEARING.  YOU MAY MAKE YOUR ELECTRONIC APPEARANCE BY:**
>
> **1) GOING TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE;**
>
> **2) SELECTING "BANKRUPTCY COURT" FROM THE TOP MENU;**
>
> **3) SELECTING "JUDGES' PROCEDURES AND SCHEDULES";**
>
> **4) SELECTING "VIEW HOME PAGE" FOR JUDGE JONES;**
>
> **5) UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE;"**
>
> **6) SELECT "DENBURY RESOURCES INC., ET AL." FROM THE LIST OF ELECTRONIC APPEARANCE LINKS; AND**
>
> **7) AFTER SELECTING DENBURY RESOURCES INC., ET AL. FROM THE LIST, COMPLETE THE REQUIRED FIELDS AND HIT THE "SUBMIT" BUTTON AT THE BOTTOM OF THE PAGE.**
>
> **SUBMITTING YOUR APPEARANCE ELECTRONICALLY IN ADVANCE OF THE HEARING WILL NEGATE THE NEED TO MAKE AN APPEARANCE ON THE RECORD AT THE HEARING.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):

## **Relief Requested**

1.      The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"):

   a. scheduling a combined hearing (the "Combined Hearing") to consider approval of the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Denbury Resources Inc. and Its Debtor Affiliates*

(the "<u>Disclosure Statement</u>"), filed contemporaneously herewith, and confirmation of the Plan (as defined herein);

b.    conditionally approving the Disclosure Statement;

c.    establishing a deadline for filing objections to the adequacy of the Disclosure Statement and confirmation of the Plan (the "<u>Objection Deadline</u>"), and approving related procedures thereto;

d.    approving the solicitation procedures regarding votes to accept or reject the Plan (the "<u>Solicitation Procedures</u>");

e.    approving the form and manner of notice of commencement of these chapter 11 cases and the Combined Hearing (the "<u>Combined Notice</u>") and the form and manner of the publication notice of the Combined Hearing and commencement of the chapter 11 cases (the "<u>Publication Notice</u>");

f.    directing that the United States Trustee for the Southern District of Texas (the "<u>U.S. Trustee</u>") not convene a meeting of creditors (the "<u>Creditors' Meeting</u>") under section 341(e) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>"), provided that the Plan is confirmed prior to September 14, 2020, (46) days after the Petition Date (as defined herein);

g.    waiving the requirement that the Debtors file statements of financial affairs ("<u>SOFAs</u>") and schedules of assets and liabilities ("<u>Schedules</u>"), provided that the Plan is confirmed prior to September 14, 2020, (46) days after the Petition Date;

h.    allowing the notice period for the Disclosure Statement and Combined Hearing to run simultaneously; and

i.    granting related relief.

2.    In connection with the foregoing, the Debtors request that the Court approve the following proposed confirmation schedule (the "<u>Confirmation Schedule</u>"):

| Event | Date |
|---|---|
| Voting Record Date | July 22, 2020 |
| Noteholder Solicitation Launch Date | July 29, 2020 |
| Petition Date | July 30, 2020 |
| Equity Solicitation Launch Date | July 31, 2020 |
| Voting Deadline | August 28, 2020, at 4:00 p.m., prevailing Central Time |
| Objection Deadline | August 28, 2020, at 4:00 p.m., prevailing Central Time |
| Combined Hearing | September 3, 2020, at __:__ _.m., prevailing Central Time |

**Jurisdiction and Venue**

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The bases for the relief requested herein are sections 105, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 1007, 2002, 3016, 3017, 3018, 3020 and 9006, and rules 1007-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

6. On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Chris Kendall, Chief Executive Officer of Denbury Resources Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with this Motion and incorporated by reference herein.

**Preliminary Statement**

7. After months of negotiations with their funded debtholders The Debtors commenced these chapter 11 cases with a restructuring support agreement (the "RSA") signed by a majority of their capital structure, including (a) Holders of approximately 67% in aggregate principal amount outstanding of Second Lien Notes (the "Consenting Second Lien Noteholders"), (bi) Holders of approximately 73% in aggregate principal amount outstanding of Convertible Notes (the "Consenting Convertible Noteholders"), and (c) Holders of 100% in aggregate principal amount outstanding of the RBL Loans (the "Consenting RBL Lenders," and, together with the

Consenting Second Lien Noteholders and the Consenting Convertible Noteholders, the "Consenting Creditors"), and a prepackaged plan of reorganization which will equitize approximately $2.1 billion of the Debtors' prepetition debt.[2]  The transactions described in and contemplated by the RSA and Plan will substantially deleverage the Debtors' balance sheet and equitize a significant portion of the Debtors' funded debt obligations.  The Plan provides for, among other things:

a.     Each Holder of an Allowed Other Secured Claim shall receive, at the option of the applicable Debtor (i) payment in full in Cash, (ii) the collateral securing its Allowed Other Secured Claim, (iii) Reinstatement of its Allowed Other Secured Claim, or (iv) such other treatment that renders its Allowed Other Secured Claim Unimpaired;

b.     Each Holder of an Allowed Other Priority Claim shall receive, at the option of the applicable Debtor (i) payment in full in Cash or (ii) such other treatment that renders its Allowed Other Priority Claim Unimpaired;

c.     Each Holder of an Allowed Pipeline Lease Claim shall receive, at the option of the applicable Debtor, (i) payment in full in Cash of its Allowed Pipeline Lease Claim, (ii) the collateral securing the Allowed Pipeline Lease Claim, (iii) Reinstatement of the Allowed Pipeline Lease Claim, or (iv) such other treatment to render such Allowed Pipeline Lease Claim Unimpaired.

d.     Each Holder of an Allowed RBL Claim or Allowed Hedge Claims shall receive payment in full in Cash or such other treatment rendering its Allowed RBL Claim or Allowed Hedge Claim, as applicable, Unimpaired;

e.     Each Holder of an Allowed Second Lien Notes Claim shall receive its *Pro Rata* share of 95% of the New DNR Equity, subject to dilution by the Warrants and the Management Incentive Plan;

f.     Each Holder of an Allowed Convertible Notes Claim shall receive its *Pro Rata* share of (i) 5% of the New DNR Equity, subject to dilution by the Warrants and the Management Incentive Plan, and (ii) the Convertible Notes Warrants Package;

---

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Joint Chapter 11 Plan of Reorganization of Denbury Resources Inc. and Its Debtor Affiliates* (as amended, supplemented, or modified from time to time, the "Plan"), or the First Day Declaration, as applicable, filed contemporaneously herewith.

g.    (i) if Class 7 votes to accept the Plan, each Holder of an Allowed Subordinated Notes Claim shall receive their *Pro Rata* share of the Subordinated Notes Warrants Package;  (ii) if Class 7 votes to reject the Plan, Holders of Subordinated Notes Claims will not receive any distribution on account of such Claims, which will be canceled, released, and extinguished as of the Effective Date;

h.    Each Holder of an Allowed General Unsecured Claim shall receive (i) payment in full in Cash, (ii) Reinstatement, or (iii) such other treatment rendering its Allowed General Unsecured Claim Unimpaired; and

i.    (i) if Class 7 and Class 11 both vote to accept the Plan, each Holder of an Existing Equity Interest shall receive its *Pro Rata* share of the Existing Equity Warrants Package; (ii) if either Class 7 or Class 11 votes to reject the Plan, Holders of Existing Equity Interest will not receive any distribution on account of such Interests, which will be canceled, released, and extinguished.

8.    In light of the RSA, the Debtors expect that the votes received from Holders of Class 5 (Second Lien Notes Claims) and Class 6 (Convertible Notes Claims) will be sufficient to confirm the Plan.  The Debtors are optimistic that the other voting classes—Class 7 (Subordinated Notes Claims) and Class 11 (Existing Equity Interests)—may also vote to accept the Plan given the opportunity to receive a recovery despite not otherwise being entitled to any distribution under the Plan based on the Debtors' valuation set forth in the Disclosure Statement.

9.    The transactions described in and contemplated by the RSA and Plan set forth a clear pathway to emergence and will leave the reorganized enterprise with a considerably diminished debt load and well-positioned to realize the significant value of its $CO_2$ enhanced oil recovery operations and valuable oil and gas assets.   An instrumental component of this comprehensive deal is the timeline to emergence.  In negotiating the RSA, case milestones were a prominent material term, with creditors focused on mitigating the significant additional administrative and financing costs of a lengthy and contested chapter 11 process.  Accordingly, the Debtors request authority to proceed with these chapter 11 cases on the proposed Confirmation Schedule.

10.     Importantly, no parties in interest are prejudiced by the proposed Confirmation Schedule.  As set forth herein, the Debtors are complying with all notice requirements under the Bankruptcy Rules and Bankruptcy Local Rules and have implemented a robust noticing program that ensures all stakeholders (including creditors receiving payment in full in the ordinary course) are given due process in these chapter 11 cases.  The Debtors are providing every known stakeholder with an expansive notice of the Debtors' intent to file these chapter 11 cases on July 30, 2020 and request the Combined Hearing to consider approval of the Disclosure Statement and confirmation of the Plan be held on September 3, 2020.  The Notices (as defined below) also summarize the material terms of the Plan, including classification and treatment of claims, provide the full text of the release, exculpation, and injunction provisions in the Plan, and offer multiple methods which stakeholders could obtain copies of the Plan, Disclosure Statement, and RSA, in the format of their choosing.  Notably, an "opt out box" is included in both the Ballots (as defined below) and the Notice of Non-Voting Status and Opportunity to Opt-Out, meaning every known stakeholder, including unimpaired creditors, are being actually served with the means by which they can opt out of the Third-Party Release.

11.     The Debtors are in the process of serving the Notices on all bondholders of record, the full creditor matrix (which includes employees, contract counterparties, mineral and working interest holders, suppliers, and others), and all equity holders of record, and expect such service to be complete on July 31, 2020.  As such, parties will have 28 days' notice of the proposed Objection Deadline of August 28, 2020, and 34 days' noticed of the proposed Combined Hearing on September 3, 2020.  The Debtors will also publish the Publication Notice in the *New York Times* and the *Houston Chronicle* within five (5) business days following entry of the Order.  Significantly, these procedures comply with all of the required time periods under the Bankruptcy

Code and the proposed Confirmation Schedule in this Motion does not alter any parties' rights under the Bankruptcy Code.  In addition, on July 29, 2020, the Debtors commenced solicitation of votes from Class 5 (Second Lien Notes Claims), Class 6 (Convertible Notes Claims), and Class 7 (Subordinated Notes Claims), and propose to commence solicitation of Class 11 (Existing Equity Interests) immediately upon entry of the Order.

12.     The following is an illustrative timeline of the Debtors' notice and solicitation efforts and the proposed Confirmation Schedule:



13.     Given their robust noticing efforts and the support of their creditors, proceeding on the proposed Confirmation Schedule, as well as the other relief requested herein, is justified to preserve consensus and value for the Debtors' stakeholders.

<u>**The Notice and Solicitation Procedures**</u>

**I.     The Notice Procedures.**

14.     Beginning on July 29, 2020, the Debtors mailed, or caused to be delivered, to all known parties in interest, including all parties listed on the creditor matrix and all noteholders or equity holders as of record as of July 22, 2020 (the "<u>Voting Record Date</u>") which total over 53,000

creditors or parties in interest and approximately 58,000 distinct equity holders, the Combined Notice, attached as <u>Exhibit 1</u> to the Order.  The Combined Notice informed or will inform recipients of (a) the Debtors' intent to commence these chapter 11 cases on or before July 30, 2020, (b) the Debtors' intent to request that the Court schedule a combined hearing to consider approval of the Disclosure Statement and Confirmation of the Plan on September 3, 2020, subject to the Court's availability, (c) the key terms of the Plan, including classification and treatment of claims and interests, (d) key dates and information regarding approval of the Disclosure Statement and confirmation of the Plan and the Objection Deadline, (e) the methods by which parties may request copies of the Plan, Disclosure Statement, and RSA, and (f) the full text of the release, exculpation, and injunction provisions set forth in the Plan.  In addition, the Debtors will also cause the Publication Notice to be published in the *New York Times* and the *Houston Chronicle*, attached as <u>Exhibit 3</u> to the Order, within five business days following entry of the Order, as soon as reasonably practicable thereafter.  The Combined Notice is also available at no charge to all members of the public on the public website maintained by the Debtors' claims, noticing, and solicitation agent, Epiq Corporate Restructuring, LLC (the "<u>Solicitation Agent</u>") at <u>https://dm.epiq11.com/Denbury</u>.

15.     Concurrently, the Debtors mailed, or caused to be delivered, to over 50,000 parties in the Non-Voting Classes on the creditor matrix as of the Voting Record Date, the Notice of Non-Voting Status and Opportunity to Opt-Out, attached as <u>Exhibit 2</u> to the Order, which (a) informed recipients of their status as Holders or potential Holders of Claims in non-voting classes, (b) provided the full text of the release, exculpation, and injunction provisions set forth in the Plan, (c) included a form by which Holders could elect to opt out of the Third-Party Release included in the Plan by checking a prominently featured and clearly labeled box

(the "Opt-Out Form"), and (d) enclosed a postage prepaid, return-addressed envelope in which Holders could return their Opt-Out Form to the Solicitation Agent.  The Opt-Out Form also contained information on how the Holder of the Claim in the non-voting class could submit an opt-out electronically via the customized online portal maintained by the Solicitation Agent ("E-Ballot").  The encrypted opt-out data and audit trail created by such electronic submission shall become part of the record of any Opt-Out Form submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.  E-Ballot is the sole method of electronic submission of Opt-Out Forms accepted by the Debtors.

16.     All Notices[3] prominently note the various methods by which Holders of Claims or Interests may obtain, at no cost, copies of the Plan and Disclosure Statement in paper or electronic form, at their election, thereby ensuring that any Holder that wishes to review the documents may do so easily, quickly, and in their preferred format.

## II.     The Solicitation Procedures.

17.     The Plan and the Disclosure Statement describe in detail the restructuring transactions contemplated by the Plan and the RSA and the recoveries provided to Holders of Claims against and Interests in the Debtors.  The following chart summarizes the classes of Claims or Interests, their status, and voting rights:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | Pipeline Lease Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 4 | RBL Claims / Hedge Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

---

[3]  As used herein, "Notices" means, collectively, the Combined Notice attached to the Order as **Exhibit 1**, the Notice of Non-Voting Status and Opportunity to Opt-Out attached to the Order as **Exhibit 2**, and the Publication Notice attached to the Order as **Exhibit 3**.

| Class | Claims and Interests | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| Class 5 | Second Lien Notes Claims | Impaired | Entitled to Vote |
| Class 6 | Convertible Notes Claims | Impaired | Entitled to Vote |
| Class 7 | Subordinated Notes Claims | Impaired | Entitled to Vote |
| Class 8 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 9 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 10 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 11 | Existing Equity Interests | Impaired | Entitled to Vote |

18.     Beginning on July 29, 2020 (the "Noteholder Solicitation Launch Date"), the Solicitation Agent distributed to Holders of Claims in Classes 5, 6, and 7 (each, a "Voting Class" and, together with Class 11, the "Voting Classes") entitled to vote to accept or reject the Plan as of the Voting Record Date, packages including the following materials (the "Solicitation Package"):

        (A)    the Combined Notice;

        (B)    the Disclosure Statement (including all exhibits); and

        (C)    the appropriate form of ballot (a "Ballot").

19.     Additionally, on the Noteholder Solicitation Launch Date, the Solicitation Agent commenced the distribution of the Combined Notice to all Holders of Interests in Class 11. Immediately upon entry of the Order, the Solicitation Agent will distribute to Holders of Interests in Class 11 the remainder of the Solicitation Package (the "Equity Solicitation Launch Date").

20.     Holders of Claims or Interests that receive the Solicitation Package are directed to follow the instructions contained in the Ballot (and described in the Disclosure Statement) to complete and submit their respective Ballot to cast a vote to accept or reject the Plan.  The Disclosure Statement and the Ballot expressly provide that each such Holder must submit its Ballot

so that it (or the Master Ballot cast on such Holder's behalf) is actually received by the Solicitation Agent on or before the Voting Deadline to be counted.  Holders that are Unimpaired under the Plan are not being provided a Solicitation Package because such Holders are conclusively presumed to accept, the Plan under sections 1126(f) and 1126(g) of the Bankruptcy Code, respectively.

21.     The Debtors, with the assistance of the Solicitation Agent, will complete a final tabulation of the Ballots and submit a final voting report following expiration of the proposed Voting Deadline of August 28, 2020.  The Debtors' procedures and standard assumptions for tabulating Ballots include the following criteria for tabulating Ballots:

| | |
|---|---|
| **Votes Not Counted** | – any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim or Interest; |
| | – any Ballot that is not actually received by the Solicitation Agent by the Voting Deadline, unless the Debtors determine otherwise or as permitted by the Bankruptcy Court; |
| | – any unsigned Ballot; |
| | – any Ballot that partially rejects and partially accepts the Plan in a particular Voting Class; |
| | – any Ballot not marked to accept or reject the Plan in a particular Voting Class or marked both to accept and reject the Plan in a particular Voting Class; |
| | – any Ballot superseded by a later, timely submitted valid Ballot; and |
| | – any improperly submitted Ballot. |
| **No Vote Splitting** | – Holders are required to vote all of their Claims or Interests in a particular Voting Class to either accept or reject the Plan and are not permitted to split any votes in a particular Voting Class. |

| **Establishing Claim Amounts** | – any Ballot must indicate the aggregate Claims or Interests amounts for each Voting Class in which the Holder votes Claims or Interests, as applicable. |
| | – The aggregate amount of Claims or Interests in each Voting Class on a Ballot that is submitted in accordance with the Solicitation Procedures shall be reconciled against the applicable registry for Claims or Interests by the Holder(s) in each Voting Class. |
| | – If any discrepancy exists between the aggregate Claims or Interests amount indicated on Ballot in one or more Voting Classes and the aggregate Claims or Interests amount as listed on the applicable registry for each Holder on such Ballot, the aggregate Claims or Interests amount as listed on the applicable registry shall govern for tabulation purposes. |

22.     The Debtors reserve the right to, in their sole and absolute discretion, make any exception to any of the foregoing assumptions and criteria.

## Basis for Relief

### I.     The Confirmation Schedule Complies with Applicable Bankruptcy Law.

23.     Bankruptcy Rule 3017(a) provides that "the court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest . . . to consider the disclosure statement and any objections or modifications thereto."  Section 1128(a) of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan."

24.     Similarly, Bankruptcy Rule 2002(b) provides that notice shall be given to "the debtor, the trustee, all creditors and indenture trustees [of] not less than 28 days . . . by mail of the time fixed for filing objections and the hearing to consider approval of a disclosure statement or, under § 1125(f), to make a final determination whether the plan provides adequate information so that a separate disclosure statement is not necessary."  Under Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court."

25.     The Court may combine the hearing on the adequacy of the Disclosure Statement and the hearing to confirm the Plan.  *See* 11 U.S.C. §§ 1125(g) (allowing the prepetition solicitation of votes through non-bankruptcy law); *see also* 11 U.S.C. § 105(d)(2)(B)(vi) (authorizing the Court to combine a hearing on approval of a disclosure statement with the confirmation hearing). Additionally, Section L of the *Procedures for Complex Chapter 11 Cases in the Southern District of Texas* (the "Complex Chapter 11 Procedures") allows the Court to combine the hearing on the adequacy of the Disclosure Statement and the hearing to confirm the Plan, so long as contemporaneously with the filing of a disclosure statement and proposed plan, a plan proponent files a motion requesting:  (a) conditional approval of the disclosure statement; (b) approval of solicitation procedures; (c) the scheduling of a hearing on shortened notice to consider conditional approval of the proposed disclosure statement; and (d) the scheduling of a joint hearing to consider final approval of the adequacy of the disclosure statement and confirmation of the proposed plan—as this Motion does.

26.     The Debtors request that the Court schedule the Combined Hearing on September 3, 2020, or as soon thereafter as the Court's schedule permits, and schedule the Objection Deadline thereto at **4:00 p.m., prevailing Central Time, on August 28, 2020**.  The Debtors also request that the Court require that objections to the Disclosure Statement or confirmation of the Plan:  (a) be in writing; (b) comply with the Bankruptcy Rules and the Bankruptcy Local Rules; (c) state the name and address of the objecting party and the amount and nature of the claim or interest beneficially owned by such entity; (d) state with the legal or factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections; and (e) be filed with the Court with proof of service thereof so as to be actually received by the Objection Deadline.

27.     The Debtors submit that it is appropriate to schedule a Combined Hearing to consider approval of the Disclosure Statement and confirmation of the Plan and have the notice periods run simultaneously in accordance with section 105(d)(2)(B)(vi) of the Bankruptcy Code, Bankruptcy Rule 9006(c)(1), and the Complex Chapter 11 Procedures.

28.     **First**, the concurrent notice periods in the proposed Confirmation Schedule will permit the Debtors to satisfy certain milestones under the RSA and DIP Facility.  These milestones were heavily negotiated between the Debtors and the Consenting Creditors and were a key inducement factor for the creditors' support and are intended to preserve value for the Debtors' creditors.  The RSA and DIP Facility milestones require confirmation of the Plan by September 6, 2020, and emergence within 14 days thereafter.  Not meeting these milestones would be an event of default under the RSA and DIP Facility, which would unravel the consensus built during months of negotiations, significantly increasing the costs of administering these chapter 11 cases.  Further, the proposed Confirmation Schedule is intended to preserve value for the Debtors' creditors by reducing the administrative costs of a drawn out chapter 11 proceeding.  Given the consensual nature of these chapter 11 cases and the restructuring transaction proposed by the Plan, the Debtors believe concurrent notice periods to permit the Combined Hearing to take place, as proposed, on September 3, 2020 is essential to the success of the reorganization.

29.     **Second**, the Debtors commenced solicitation on noteholders, including by electronic notification on certain parties, on July 29, 2020 (36 days prior to the requested date for the Combined Hearing) and plan to commence solicitation of equity holders on July 31, 2020 (34 days prior to the requested date for the Combined Hearing), in accordance with sections 1125(g) and 1126(b) of the Bankruptcy Code.  The Disclosure Statement and other solicitation materials are being distributed to each Holder of a Claim or Interest entitled to vote on the Plan,

and are readily available at no cost on the Debtors' chapter 11 website: https://dm.epiq11.com/Denbury.

30. **Third**, the proposed Objection Deadline of August 28, 2020 is 28 days following the expected completion date for service of the Combined Notice, and the proposed Combined Hearing on September 3, 2020 is 34 days following the expected completion date for service of the Combined Notice, both of which comply with the time periods required by the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.

31. **Fourth**, the Holders of Claims not entitled to vote will not be denied due process because Holders were served prepetition with a Notice of Non-Voting Status and Opportunity to Opt-Out, which includes notice of the applicable deadlines thereto.

32. **Finally**, as described herein, the Debtors have implemented a robust noticing plan that will provide over 53,000 creditors and approximately 58,000 equity holders with notice of the Combined Hearing and related deadlines, the material terms of the Plan, the third-party releases, and the opportunity to opt out of such releases.

33. For the foregoing reasons, the Debtors believe the Confirmation Schedule is reasonable, appropriate, in compliance with the applicable rules, and most importantly, gives due process to all of their stakeholders.

## II.     Conditional Approval of the Disclosure Statement.

34. The Debtors also seek limited relief from the requirements of section 1125(b) of the Bankruptcy Code[4] solely for the purposes of permitting the Debtors to solicit acceptances of

---

4   Section 1125(b) of the Bankruptcy Code provides, in relevant part, "[a]n acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information."

the Plan from Holders in Class 11 (Existing Equity Interests), with final approval of the Disclosure Statement to be determined at the Combined Hearing as contemplated by section 105(d)(2)(B)(vi) of the Bankruptcy Code and in accordance with Section L of the Complex Chapter 11 Procedures. Section L of the Complex Chapter 11 Procedures, provides that the Court may consider motions seeking conditional approval of a disclosure statement so long as such motions include a proposed order which:  (a) finally approves the balloting and voting procedures to be utilized; (b) finally approves the form of notice to be provided to creditors and interest holders of the debtors; (c) finally approves the form of ballot which will be provided to creditors and interest holders entitled to vote on the proposed plan; (d) establishes a record date; and (e) establishes a voting deadline.  This Motion and proposed Order comply with these requirements of the Complex Chapter 11 Procedures and the other requirements of the Bankruptcy Rules.

35.     For the avoidance of doubt, the Debtors are only seeking limited relief to continue solicitation postpetition so as to adhere to the milestones set forth in the RSA.  Final approval of the Disclosure Statement will be determined at the Combined Hearing and the Debtors seek conditional approval of the Disclosure Statement to adhere to the dates set forth in the proposed Confirmation Schedule and commence solicitation of Class 11 (Existing Equity Interests). Specifically, the Debtors are not requesting that entry of the proposed Order be a determination as to the adequacy of the Disclosure Statement.  Rather, such approval will be sought at the Combined Hearing and all parties' rights to object to the adequacy of the Disclosure Statement (subject to and in accordance with the deadlines and procedures otherwise set forth in the proposed Order) are reserved.  Courts in this district have recognized that debtors may "straddle" solicitation by commencing solicitation prior to the petition date and continuing postpetition. *See, e.g.*, *Pioneer Energy Servs. Corp.*, No. 20-31425 (DRJ) (Bankr. S.D. Tex. Mar. 2, 2020) (conditionally

approving the disclosure statement to permit the prepetition solicitation process to continue with the postpetition commencement of solicitation of equity holders).

36.     The Debtors request that the Court conditionally approve the Disclosure Statement and approve the use of the Disclosure Statement during the Debtors' solicitation of acceptances of the Plan.

## III.     Approval of the Solicitation Procedures.

37.     The Debtors commenced distribution of the Solicitation Packages to noteholders and the Combined Notice to Holders of Existing Equity Interests (and the Creditor Matrix) on July 29, 2020 and intend to distribute the remainder of the materials in the Solicitation Packages to Holders of Existing Equity Interests immediately upon entry of the Order.  The Debtors are soliciting votes to accept or reject the Plan in accordance with sections 1125 and 1126 of the Bankruptcy Code.  *See* 11 U.S.C. § 1125(g) (debtors may commence solicitation prior to filing chapter 11 petitions); *see also* 11 U.S.C. § 1126(b)(2) (holders of claims or interests that accepted or rejected a plan before the commencement of a chapter 11 case are deemed to accept or reject the plan so long as the solicitation provided adequate information).  Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and interests for the purpose of soliciting their votes to accept or reject a plan of reorganization.

38.     Given that the contents of the Solicitation Package are voluminous, the Debtors have prepared to distribute, and request that they be authorized to distribute, the Solicitation Packages to Holders of Class 11 Interests in electronic format (*i.e.*, on a CD-ROM or USB flash drive), and distribution in this manner will translate into monetary savings for the Debtors' estates by reducing printing and postage costs.

39.     The Solicitation Package advises recipients of the procedures for returning the Ballot in order for a vote to be counted.  Each Ballot also contains detailed instructions on how to complete it and how to make any applicable elections contained therein.

40.     As set forth herein, the Solicitation Packages comply with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, and the Debtors seek approval of the Solicitation Procedures, the Ballots, and the procedures used for tabulations of votes to accept or reject the Plan.  Similar solicitation and tabulation procedures have been approved in other chapter 11 cases in this district and others.

### A.     Voting Record Date.

41.     Bankruptcy Rule 3018(b) provides that, in a prepetition solicitation, the Holders of record of the applicable claims against and interests in a debtor entitled to receive ballots and related solicitation materials are to be determined "on the date specified in the solicitation." The Disclosure Statement and Ballot clearly identify July 22, 2020, as the Voting Record Date for determining which Holders of Claims and Interests were entitled to vote to accept or reject the Plan.

### B.     Voting Deadline.

42.     Bankruptcy Rule 3018(b) provides that prepetition acceptances and rejections of a plan are valid only if the plan was transmitted to substantially all the holders of claims in the same voting class and the time for voting was not unreasonably short.  All Holders of Claims entitled to vote on the Plan were transmitted the Solicitation Package beginning on or about July 29, 2020. Additionally, Holders of Interests entitled to vote on the Plan will be transmitted the Solicitation Package as soon as reasonably practicable after the entry of the Order.  As set forth in the Disclosure Statement and the Ballots, the Debtors request that the Voting Deadline be set for August 28, 2020.  Thus, the Holders of Claims and Interests entitled to vote on the Plan have

adequate time to consider the Plan and the Disclosure Statement and submit a Ballot before the Voting Deadline.

43.     The transactions proposed in the Plan are the product of hard-fought, arm's-length negotiations among the Debtors and the Consenting Creditors.  Prior to the Noteholder Solicitation Launch Date, the Plan and the Disclosure Statement were subject to extensive review and comment by the Consenting Creditors.  Additionally, as described above, the Voting Deadline is consistent with the applicable notice period requirements under the Bankruptcy Code, Bankruptcy Rules, and Bankruptcy Local Rules, and meets the milestones in the RSA and DIP Facility.  For these reasons, the Debtors believe that the solicitation period is sufficient and appropriate for Holders of Claims and Interests entitled to vote on the Plan to make an informed decision to accept or reject the Plan.

###     C.     The Ballots.

44.     Bankruptcy Rule 3017(d) requires the Debtors to transmit a form of ballot, which substantially conforms to Official Form No. 314, only to "creditors and equity security holders entitled to vote on the plan."  Bankruptcy Rule 3018(c) provides that "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity holder or an authorized agent, and conform to the appropriate Official Form."  Only the Holders of Claims or Interests in the Voting Classes were or will be transmitted Ballots.  The form of Ballot used in solicitation is based on Official Form No. 314 and has been modified, as applicable, to address the particular circumstances of these chapter 11 cases to include certain information that the Debtors believe to be relevant and appropriate for holders of Claims or Interests entitled to vote to accept or reject the Plan.  The Ballots used in solicitation are annexed as <u>Exhibit 4A</u>, <u>Exhibit 4B</u>, <u>Exhibit 5A</u>, <u>Exhibit 5B</u>, and <u>Exhibit 5C</u> to the Order.

**D.      Vote Tabulation.**

45.      As described above, the Debtors are using standard tabulation procedures in tabulating votes.  These procedures are consistent with section 1126(c) of the Bankruptcy Code and Bankruptcy Rule 3018(a) and are similar to those used in cases in this district and others.

**E.      The Debtors' Prepetition Solicitation was Exempt from Registration and Disclosure Requirements Otherwise Applicable Under Nonbankruptcy Law.**

46.      Section 1125(g) of the Bankruptcy Code provides that:

> [A]n acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law.

47.      Section 1126(b) of the Bankruptcy Code provides that:

> [A] holder of a claim or interest that has accepted or rejected the plan before the commencement of the case under this title is deemed to have accepted or rejected such plan, as the case may be, if—(1) the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; or (2) if there is not any such law, rule, or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of this title.

48.      Prepetition solicitations must therefore either comply with generally applicable federal and state securities laws and regulations (including the registration and disclosure requirements thereof) or, if such laws and regulations do not apply, the solicited holders must receive "adequate information" under section 1125 of the Bankruptcy Code.

49.      The prepetition solicitation is exempt from the registration requirements of the Securities Act of 1933 (the "Securities Act"), under one or more of the exceptions from registration provided thereunder, including section 4(a)(2) thereof, state "Blue Sky" laws, or any similar rules, regulations, or statutes.   Section 4(a)(2) of the Securities Act creates an exemption from

nonbankruptcy securities law for transactions not involving a "public offering."  15 U.S.C. §
77d(a)(2).  With respect to the impaired Claims under the Plan, the Holders of Second Lien Notes
Claims, Convertible Notes Claims, and Subordinated Notes Claims will not receive securities
pursuant to a "public offering."  Furthermore, the Debtors understand that all Holders of Claims
entitled to vote on the Plan were accredited investors, as that term is defined in Rule 501 of
Regulation D, and that there was no general solicitation in connection with the sale of securities
under the Plan.  As such, the Debtors' prepetition solicitation does not constitute a public offering
because it falls within the exemption set out in section 4(a)(2) of the Securities Act.  The
requirements of section 1126(b)(1) of the Bankruptcy Code are satisfied by the Debtors'
prepetition solicitation process.  As discussed below, the Debtors will seek a determination from
the Court at the Combined Hearing that all solicited holders received "adequate information" as
defined by section 1125(a) of the Bankruptcy Code in compliance with section 1126(b)(2) of the
Bankruptcy Code.

50.     Debtors in prior cases have utilized section 4(a)(2) of the Securities Act to exempt
their prepetition solicitation from the registration and disclosure requirements otherwise applicable
under nonbankruptcy law.

**F.     Postpetition Solicitation of Holders of Existing Equity Interests**

51.     Under applicable securities law, Holders of Existing Equity Interests could not be
solicited prior to the Petition Date.  The Debtors therefore request, pursuant to section 1145 of the
Bankruptcy Code, that the Court permit the solicitation of all Holders of Existing Equity Interests
as of the Voting Record Date.

52.     As described above, the Debtors distributed the Solicitation Package to all Holders
of Claims in Class 5, Class 6, and Class 7 and commenced the distribution of the Combined Notice
to Holders of Existing Equity Interests in Class 11 prior to the Petition Date.  The Debtors propose

to distribute the applicable Ballot and Disclosure Statement to all Holders of Existing Equity Interests immediately upon entry of the Order.  There are 28 days (and 20 business days) between the date of the proposed Equity Solicitation Launch and the Voting Deadline, such timeframe is reasonable under the circumstances.

## IV.    Approval of the Disclosure Statement at the Combined Hearing.

53.    The Debtors will request that, at the Combined Hearing, the Court find that the Disclosure Statement contains "adequate information" as defined in section 1125(a) of the Bankruptcy Code.  *See* 11 U.S.C. § 1126(b)(2) (because there is no nonbankruptcy law governing the solicitation of claim and interest holders prior to the Debtors commencing these chapter 11 cases, such solicitation must have been based on the Debtors providing such holders "adequate information").

54.    The Disclosure Statement contains adequate information because it is extensive and comprehensive.  What constitutes "adequate information" is based on the facts and circumstances of each case, but the focus is on whether sufficient information is provided to enable parties to vote in an informed way, and that standard is easily met here.[5]  Specifically, the Disclosure Statement contains a number of categories of information that courts consider "adequate information," including without limitation:

| Category | Description | Location in Disclosure Statement |
|---|---|---|

---

[5]    *See* 11 U.S.C. § 1125(a)(1) (defining adequate information as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records"); *see also Mabey v. SW Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.),* 150 F.3d 503, 518 (5th Cir. 1998) (stating that courts are vested with wide discretion to determine whether a disclosure statement contains "adequate information" within the meaning of section 1125(a) of the Bankruptcy Code); *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321–22 (3d Cir. 2003) (providing that a disclosure statement must contain "adequate information to enable a creditor to make an informed judgment about the Plan") (internal quotations omitted); *In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (noting that the determination of whether a disclosure statement contains adequate information must be made on a case-by-case basis, focusing on the unique facts and circumstances of each case).

| Category | Description | Location in Disclosure Statement |
|---|---|---|
| Debtors' Corporate History, Structure, and Business Overview | An overview of the Debtors' corporate history, business operations, organizational structure, and capital structure. | Article V; Exhibit C |
| Events Leading to the Chapter 11 Filings | An overview of the Debtors' out-of-court restructuring efforts in response to deteriorating economic conditions, including the negotiations with respect to the Plan and the RSA. | Article VI |
| The Debtors' RSA and Plan | An overview of the terms of Debtors' RSA and Plan | Article IV; Exhibit A; Exhibit B |
| Projected Financial Information | A projected consolidated income statement. | Exhibit E |
| Valuation Analysis | A valuation of the post-Confirmation going concern value of the Debtors. | Exhibit F |
| Liquidation Analysis | An analysis of the liquidation value of the Debtors. | Exhibit D |
| Risk Factors | Certain risks associated with the Debtors' businesses, as well as certain risks associated with forward-looking statements and an overall disclaimer as to the information provided by and set forth in the Disclosure Statement. | Article VII |
| Solicitation and Voting Procedures | A description of the procedures for soliciting votes to accept or reject the Plan and voting on the Plan. | Article VIII |
| Confirmation of the Plan | Confirmation procedures and statutory requirements for Confirmation and Consummation of the Plan, including a liquidation analysis, financial projections, and a valuation. | Article IX; Exhibit D; Exhibit E; Exhibit F |
| Certain Securities Laws Matters | A description of the applicability of section 1145 of the Bankruptcy Code and the issuance of New DNR Equity and Warrants under the Plan. | Article X |
| Certain United States Federal Income Tax Consequences of the Plan | A description of certain U.S. federal income tax law consequences of the Plan. | Article XI |
| Recommendation | A recommendation by the Debtors that Holders of Claims in the Voting Classes should vote to accept the Plan. | Article XII |

55.     The Disclosure Statement and the Plan were subject to extensive review and comment by the Consenting Creditors.  Accordingly, the Disclosure Statement contains adequate

information within the meaning of section 1125(a) of the Bankruptcy Code and should be approved.

## V.      Waiver of Certain Solicitation Package Mailings.

56.      The Debtors request that the Court waive the requirement that they mail, or cause to be delivered, a copy of the Solicitation Package to holders of Claims presumed to accept the Plan.  *See* Fed. R. Bankr. P. 3017(d) (requiring transmission of a court-approved disclosure statement to, inter alia, classes of unimpaired creditors and equity security holders unless the court orders otherwise).  Bankruptcy Rule 3017(d) applies, in relevant part, "[u]pon approval of a disclosure statement."  Accordingly, Bankruptcy Rule 3017 may be deemed not to apply here considering the prepetition solicitation process employed.  *See also* 11 U.S.C. § 1126(f)–(g) (providing that solicitation of parties either presumed to accept or deemed to reject is unnecessary). The Debtors, however, make this request out of an abundance of caution.  Distributing the Solicitation Packages to non-voting creditors is an unnecessary expense.  Estate resources should be preserved for the benefit of all stakeholders and that the Debtors should not be distracted by having to satisfy this mailing requirement.  The Debtors have also made the Solicitation Package (excluding the Ballot) available at no cost on their chapter 11 website: https://dm.epiq11.com/Denbury.  The following chart summarizes the notices and materials provided or to be provided by the Debtors to each class of Claims or Interests:

| Voting Classes | Materials Provided / To Be Provided |
|---|---|
| Class 5 (Second Lien Notes Claims)<br>Class 6 (Convertible Notes Claims)<br>Class 7 Subordinated Notes Claims | • On the Noteholder Solicitation Launch Date, the Combined Notice, the Disclosure Statement (and all exhibits and annexes thereto), and the applicable Ballot |
| Class 11 (Existing Equity Interests) | • On the Noteholder Solicitation Launch Date, the Combined Notice; and<br>• Immediately upon entry of the Order, the Disclosure Statement (and all exhibits and annexes thereto), and the applicable Ballot |

| Non-Voting Classes | Materials Provided / To Be Provided |
|---|---|
| Class 1 (Other Secured Claims)<br>Class 2 (Other Priority Claims)<br>Class 3 (Pipeline Lease Claims)<br>Class 4 (RBL Claims / Hedge Claims)<br>Class 8 (General Unsecured Claims) | • On the Noteholder Solicitation Launch Date, Notice of Non-Voting Status and Opportunity to Opt-Out, and the Opt-Out Form |
| Class 9 (Intercompany Claims)<br>Class 10 (Intercompany Interests) | • None |

## VI. Approval of the Form and Manner of the Combined Notice.

57.     The Debtors request approval of the Combined Notice, substantially in the form of Exhibit 1 attached to the Order.  The Debtors are serving the Combined Notice upon the Debtors' creditor matrix and all Holders of Claims or Interests as of the Voting Record Date.  In accordance with Bankruptcy Rules 2002 and 3017(d), the Combined Notice provides notice that:  (a) the Debtors anticipated filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, no later than July 30, 2020; (b) the Debtors are requesting the Combined Hearing be held on September 3, 2020, to consider (i) the adequacy of the information contained in the Disclosure Statement and (ii) confirmation of the Plan; (c) the deadline and procedures for filing objections to the adequacy of the Disclosure Statement and confirmation of the Plan; (d) the manner in which the Disclosure Statement, the Plan, and other pleadings filed in these chapter 11 cases can be obtained or viewed electronically; and (e) a summary of the treatment of each Class under the Plan. In addition, the Combined Notice noted the possible waiver of the meeting of creditors pursuant to section 341 of the Bankruptcy Code.

58.     Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."  The Debtors will also publish the Publication Notice, substantially in the form of Exhibit 3 attached to the Order, in the *New York Times* and the *Houston Chronicle* within five (5) business days following entry of the Order, or as soon as reasonably practicable thereafter.  The Debtors believe that the

Publication Notice provides sufficient notice of the pending approval of the Disclosure Statement, the Combined Hearing, and the Objection Deadline to entities who would not otherwise receive notice by mail as provided herein and through the Solicitation Procedures.

59.     The Debtors are also serving the Notice of Non-Voting Status and Opportunity to Opt-Out, substantially in the form attached as <u>Exhibit 2</u> to the Order, upon the Holders of Claims in Classes that are Unimpaired under the Plan and, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, as of the Voting Record Date.  As clearly set forth in the included Opt-Out Form, all Opt-Out Forms must be returned no later than August 28, 2020 (the "<u>Opt-Out Deadline</u>").  Thus, Holders of Claims not entitled to vote on the Plan have adequate time to consider the Plan and the Disclosure Statement and opt out of the releases thereunder before the Opt-Out Deadline.

60.     The Debtors request that they not be required to mail Solicitation Packages, other solicitation materials, or a Non-Voting Status Notice to the holders of Class 9 Intercompany Claims or Class 10 Intercompany Interests.[6]

## VII.   Cause Exists to Waive the Requirements that the U.S. Trustee Convene a Meeting of Creditors and the Debtors File Schedules and SOFAs.

61.     The circumstances of these chapter 11 cases merit a conditional waiver of the requirements that (a) the U.S. Trustee convene a Creditors' Meeting, and (b) the Debtors file Schedules and SOFAs.  This relief is appropriate if (i) all Claims other than the notes Claims are Unimpaired under the Plan, and will either be reinstated, paid in full in the ordinary course, otherwise receive treatment as to render the Holder Unimpaired, and (ii) the only impaired Claim

---

[6]   Intercompany Claims and Intercompany Interests shall be reinstated or modified at the option of the Debtors. Thus, Holders of Intercompany Claims and Intercompany Interests will not be entitled to vote to accept or reject the Plan. Accordingly, and in light of the fact that the Intercompany Claims and Intercompany Interests are all held by the Debtors, the Debtors are requesting a waiver from any requirement to serve Holders of Intercompany Claims and Intercompany Interests with a Solicitation Package.

holders are noteholders whose interests are ably represented by the indenture trustees and, with respect to the Second Lien Noteholders and Convertible Noteholders, sophisticated counsel representing a majority of holders in each class who support the Plan.

62.     Section 341 of the Bankruptcy Code allows a court to waive the requirement of a meeting of creditors or equity holders if a debtor has filed a plan on the petition date and solicited acceptances of a plan prior to the commencement of a chapter 11 case.   More specifically, section 341(e) of the Bankruptcy Code provides that:

> Notwithstanding subsections (a) and (b), the court, on the request of a party in interest and after notice and a hearing, for cause may order that the United States trustee not convene a meeting of creditors or equity security holders if the debtor has filed a plan as to which the debtor solicited acceptances prior to the commencement of the case.

11 U.S.C. § 341(e).

63.     The Debtors filed the Plan contemporaneously with this Motion on the Petition Date, and the Debtors commenced solicitation of votes of certain Voting Classes to accept or reject the Plan on July 29, 2020, prior to the Petition Date, thereby satisfying the threshold statutory requirement.

64.     Cause exists to waive the section 341 meeting as set forth herein because unsecured creditors holding allowed Claims will be reinstated or paid in full under the Plan and other "first day" relief sought by the Debtors.   Holders of Claims entitled to vote on the Plan will not be harmed because they were adequately represented by sophisticated counsel during the Plan negotiation process, or, with respect to the Subordinated Notes, will have their interests adequately represented by their indenture trustee.   Such creditors are not prejudiced by the lack of a Creditors' Meeting.   To the contrary, a section 341 meeting may force the Debtors to delay the Combined Hearing, thereby causing additional administrative expenses and professional fees to the detriment of the Debtors' estates.   The RSA requires the Debtors to confirm the Plan within a prescribed

timeframe, the failure of which could jeopardize the current support for the Plan. For these reasons, sufficient cause exists to waive the requirement of a section 341 meeting as set forth herein.

65.     The Debtors also request that the time for filing their Schedules and SOFAs be extended until September 14, 2020 and be waived in the event the Plan is confirmed on or prior to that date.  The Court has authority to grant an extension "for cause" pursuant to Bankruptcy Rule 1007(c) and Bankruptcy Local Rule 1007-l(b).  Here, cause exists to further extend the deadline because requiring the Debtors to file Schedules and SOFAs would distract the Debtors' management and advisors from the work of ensuring a smooth transition into these chapter 11 cases and an expedited confirmation of the Plan, which is necessary in light of the milestones embedded in the RSA.  Given the prepackaged nature of these chapter 11 cases, the Schedules and SOFAs would also be of limited utility to most parties in interest—the Debtors have already commenced solicitation and obtained commitments under the RSA necessary to confirm the Plan. The minimal benefit of requiring the Debtors to prepare the Schedules and SOFAs will be significantly outweighed by the substantial expenditure of time and resources the Debtors will be required to devote to the preparation and filing of the documents.  Furthermore, the Debtors have already provided substantial diligence to their lenders' advisors during the Plan negotiation process and stand ready to respond to additional diligence requests, thereby making the requirement to file Schedules and SOFAs duplicative.  For these reasons, the Court should only contingently require the Debtors to file SOFAs and Schedules if the Plan is not confirmed on or before September 14, 2020.

66.     Accordingly, the Debtors request that the Order provide that if the Plan is confirmed on or before September 14, 2020, the Creditors' Meeting will be waived and the Debtors will be excused from filing the SOFAs and Schedules, in each case without further order of the Court.

67.     The Debtors ask that the requested relief be granted without prejudice to the Debtors' ability to seek further extension or modification of the requirements for the U.S. Trustee to convene a Creditors' Meeting and for the Debtors to file Schedules and SOFAs. The Debtors also request that the Court authorize the Debtors to further extend the deadline to convene a Creditors' Meeting and file Schedules and SOFAs without filing a supplemental motion, and without further order from the Court, provided that the Debtors obtain the advance consent of the U.S. Trustee.

## Waiver of Bankruptcy Rules 6004(a) and 6004(h)

68.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Emergency Consideration

69.     Pursuant to Bankruptcy Local Rule 9013-1(i), the Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth in this Motion, the Debtors believe an orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could cause irreparable harm. Additionally, any delays in the chapter 11 process could frustrate the ongoing marketing process and the Debtors' ability to close a value-maximizing sale. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, request that the Court approve the relief requested in this Motion on an emergency basis.

## Notice

70.     Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Bankruptcy Local Rules, and is sufficient under the circumstances.   Without limiting the foregoing, due notice will be afforded, whether by facsimile, electronic mail, overnight courier or hand delivery, to parties-in-interest, including:  (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) JPMorgan Chase Bank, N.A., as administrative agent under the Debtors' revolving credit facility; (d)  Vinson & Elkins LLP, as counsel to the administrative agent under the Debtors' revolving credit facility; (e) Wilmington Trust, N.A., as indenture trustee under the Debtors' (i) 9.00% second lien secured notes due 2021, (ii) 9.250% second lien secured notes due 2022, (iii) 7.50% second lien secured notes due 2024, (iv) 7.750% second lien secured notes due 2024, and (v) 6.375% convertible notes due 2024; (f) Wilmington Trust, N.A., as successor indenture trustee under the Debtors' (i) 6.375% subordinated notes due 2021, (ii) 4.625% subordinated notes due 2023, and (iii) 5.50% subordinated notes due 2022; (g) Paul, Weiss, Rifkind, Wharton & Garrison LLP, as counsel to the Second Lien *Ad Hoc* Committee; (h) Akin Gump Strauss Hauer & Feld LLP, as counsel to the ad hoc group of convertible bondholders; (i) the United States Attorney's Office for the Southern District of Texas;  (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (m) the state attorneys general for states in which the Debtors conduct business; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors request that the Court enter the Order, substantially in the form attached hereto, respectively, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Houston, Texas
July 30, 2020

/s/ *Matthew D. Cavenaugh*

**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Vienna F. Anaya (TX Bar No. 24091225)
Victoria Argeroplos (TX Bar No. 24105799)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:     (713) 752-4200
Facsimile:     (713) 752-4221
Email:          mcavenaugh@jw.com
                    vanaya@jw.com
                    vargeroplos@jw.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
Christopher Marcus, P.C. (*pro hac vice* admission pending)
Rebecca Blake Chaikin (*pro hac vice* admission pending)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          joshua.sussberg@kirkland.com
                    christopher.marcus@kirkland.com
                    rebecca.chaikin@kirkland.com

-and-

David L. Eaton (*pro hac vice* admission pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          david.eaton@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**<u>Certificate of Accuracy</u>**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Local Rule 9013-1(i).

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh


**<u>Certificate of Service</u>**

I certify that on July 30, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh