**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DENBURY RESOURCES INC., *et al.*,[1] | ) | Case No. 20-33801 (DRJ) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | (Emergency Hearing Requested) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY
OF INTERIM AND FINAL ORDERS (I) AUTHORIZING
THE DEBTORS TO (A) PERFORM UNDER AND/OR AMEND
PREPETITION HEDGES, (B) ENTER INTO, AND PERFORM UNDER,
POSTPETITION HEDGES, (C) GRANT LIENS AND SUPERPRIORITY
ADMINISTRATIVE EXPENSE CLAIMS, AND (II) GRANTING RELATED RELIEF**

> **EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON JULY 31, 2020, AT 7:30 A.M. (CENTRAL TIME) IN COURTROOM 400, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TEXAS 77002. IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **RELIEF IS REQUESTED NOT LATER THAN JULY 31, 2020.**
>
> **PLEASE NOTE THAT ON MARCH 24, 2020, THROUGH THE ENTRY OF GENERAL ORDER 2020-10, THE COURT INVOKED THE PROTOCOL FOR EMERGENCY PUBLIC HEALTH OR SAFETY CONDITIONS.**
>
> **IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.**
>
> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S REGULAR DIAL-IN NUMBER. THE DIAL-IN NUMBER IS +1(832) 917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. YOU WILL BE ASKED TO KEY IN THE CONFERENCE ROOM NUMBER. JUDGE JONES'S CONFERENCE ROOM NUMBER IS 205691.**

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Denbury Resources Inc. (7835); Denbury Air, LLC (7621); Denbury Brookhaven Pipeline Partnership, LP (6322); Denbury Brookhaven Pipeline, LLC (6471); Denbury Gathering & Marketing, Inc. (6150); Denbury Green Pipeline-Montana, LLC (6443); Denbury Green Pipeline-North Dakota, LLC (7725); Denbury Green Pipeline-Riley Ridge, LLC (2859); Denbury Green Pipeline-Texas, LLC (2301); Denbury Gulf Coast Pipelines, LLC (0892); Denbury Holdings, Inc. (1216); Denbury Onshore, LLC (7798); Denbury Operating Company (7620); Denbury Pipeline Holdings, LLC (0190); Denbury Thompson Pipeline, LLC (0976); Encore Partners GP Holdings, LLC (N/A); Greencore Pipeline Company, LLC (9605); Plain Energy Holdings, LLC (0543). The location of Debtor Denbury Resources Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 5320 Legacy Drive, Plano, Texas 75024.

> **PARTIES MAY PARTICIPATE IN ELECTRONIC HEARINGS BY USE OF AN INTERNET CONNECTION. THE INTERNET SITE IS WWW.JOIN.ME. PERSONS CONNECTING BY MOBILE DEVICE WILL NEED TO DOWNLOAD THE FREE JOIN.ME APPLICATION.**
>
> **ONCE CONNECTED TO WWW.JOIN.ME, A PARTICIPANT MUST SELECT "JOIN A MEETING". THE CODE FOR JOINING THIS HEARING BEFORE JUDGE JONES IS "JUDGEJONES". THE NEXT SCREEN WILL HAVE A PLACE FOR THE PARTICIPANT'S NAME IN THE LOWER LEFT CORNER. PLEASE COMPLETE THE NAME AND CLICK "NOTIFY".**
>
> **HEARING APPEARANCES SHOULD BE MADE ELECTRONICALLY AND IN ADVANCE OF THE HEARING. YOU MAY MAKE YOUR ELECTRONIC APPEARANCE BY:**
>
> **1) GOING TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE;**
>
> **2) SELECTING "BANKRUPTCY COURT" FROM THE TOP MENU;**
>
> **3) SELECTING "JUDGES' PROCEDURES AND SCHEDULES";**
>
> **4) SELECTING "VIEW HOME PAGE" FOR JUDGE JONES;**
>
> **5) UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE;"**
>
> **6) SELECT "DENBURY RESOURCES INC., ET AL." FROM THE LIST OF ELECTRONIC APPEARANCE LINKS; AND**
>
> **7) AFTER SELECTING DENBURY RESOURCES INC., ET AL. FROM THE LIST, COMPLETE THE REQUIRED FIELDS AND HIT THE "SUBMIT" BUTTON AT THE BOTTOM OF THE PAGE.**
>
> **SUBMITTING YOUR APPEARANCE ELECTRONICALLY IN ADVANCE OF THE HEARING WILL NEGATE THE NEED TO MAKE AN APPEARANCE ON THE RECORD AT THE HEARING.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion (this "Motion"):

### Relief Requested

1. The Debtors seek entry of an interim order (the "Interim Order") and a final order (the "Final Order"), substantially in the forms attached hereto: (a) authorizing the Debtors to: (i) perform under and/or amend Prepetition Hedges (as defined below), including paying all prepetition and postpetition amounts owing thereunder other than any amounts that become owing by any Debtor as a result of termination of any such Prepetition Hedge prior to amendment of the terms of the agreement governing such Prepetition Hedge on terms satisfactory to the Debtor (such permitted payments, the "Permitted Prepetition Hedge Payments"); (ii) enter into, and perform

under, Hedges (as defined below) entered into after the Petition Date ("Postpetition Hedges") including paying all amounts owing thereunder (the "Permitted Postpetition Hedge Payments" and, together with the Permitted Prepetition Hedge Payments, the "Permitted Hedge Payments"); and (iii) grant administrative priority status to the claims in respect of Permitted Hedge Payments made on account of Postpetition Hedges with Hedge Banks (as defined in the DIP Credit Agreement) and Qualifying Prepetition Hedges (as defined below); and (b) granting related relief.

2. In addition, the Debtors request that the Court schedule a final hearing within 35 days of the commencement of these chapter 11 cases, or as soon thereafter as is convenient for the Court, to consider approval of this motion on a final basis.

### Jurisdiction and Venue

3. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157 (b). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The bases for the relief requested herein are sections 361, 362, 363, and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Bankruptcy Rules 2002, 4001, 6003, and 6004, and rules 4001-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

6. On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Christian S. Kendall, Chief Executive Officer of Denbury Resources Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with this Motion and incorporated by reference herein.

7. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this Motion the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

**The Debtors' Hedging Activities**

I. **The Debtors Historically Have Entered into Hedges to Mitigate Commodity Price Risk Associated with Their Oil and Natural Gas Business.**

8. In the ordinary course of business, the Debtors engage in oil and natural gas development and production activities in various producing regions in the United States. Approximately 97% of Denbury's production is oil. Therefore, the Debtors' revenue is exposed predominately to the prevailing market prices of oil which has experienced significant price volatility over recent years. To limit their exposure to such volatility, certain of the Debtors enter into financial derivative contracts to hedge value of future production ("Hedges") in the ordinary course of business, including, but not limited to, price floors, collars, three-way collars, fixed-price swaps, and basis swaps, as is customary in the Debtors' industry. The appropriate level of production to be hedged is an ongoing consideration and is based on a variety of factors

(the "Hedging Considerations"), including current and future expected commodity market prices, cost and availability of Hedges, the level of anticipated production, including by way of acquisitions, and the Debtors' overall risk profile. As a result, the appropriate percentage of production volumes to be hedged may change over time. The Debtors do not enter into or maintain derivative financial instruments for trading purposes.

9. Historically, the Debtors have hedged up to 80% of their oil and natural gas production, though the amount of hedged production has varied from year to year based on the Debtors' evaluation of applicable Hedge Considerations. As of the Petition Date, the Debtors have hedged approximately 71% of their estimated remaining 2020 total production, which includes approximately 6.6 million barrels of oil and has a net mark-to-market value of approximately $31 million (in amounts due to the Debtors).

10. As of the Petition Date, the Debtors were party to approximately 82 Hedges (the "Prepetition Hedges") with 12 different counterparties, including, without limitation, lenders and affiliates of lenders (collectively, the "Hedge Counterparties") under the Debtors' prepetition revolving credit facility (the "RBL Facility"). The vast majority of the Debtors' obligations under the Prepetition Hedges were secured by equal liens in the collateral and equal in priority of payment, with the obligations to repay principal to the lenders, under the RBL Facility. If all of the secured Prepetition Hedges were terminated on the Petition Date, such terminations would have given rise to approximately $10.5 million in secured claims against the Debtors.

**II.     The Postpetition Hedges, Certain Prepetition Hedges, and the DIP Facility.**

11. Contemporaneously herewith, the Debtors filed a motion seeking approval of a $614 million debtor-in-possession financing facility (the "DIP Facility"),[2] which is comprised of,

---

[2] For additional information regarding the DIP Facility and the DIP Credit Agreement, *see Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured*

subject to the terms of the DIP Credit Agreement and the DIP Orders, approximately $289 million in new money commitments and a dollar-for-dollar "roll up" of approximately $230 million of outstanding loans under the RBL Facility ($185 million of which are proposed to "roll" upon entry of the Interim DIP Order) and approximately $95 million of letter of credit exposure under the RBL Facility, 100% of which are proposed to "roll" and be deemed issued under the DIP Credit Agreement upon entry of the Interim DIP Order. The proposed Interim DIP Order provides, among other things, that Postpetition Hedges and any Prepetition Hedges satisfying the conditions set forth in clause (b) of the definition of "Hedge Bank" under the DIP Credit Agreement (the "Qualifying Prepetition Hedges") will have the superpriority claim status pursuant to section 364(c)(1) of the Bankruptcy Code ("Superpriority Status"), be secured by equal liens in the collateral, and be equal in priority of payment, with the obligations to repay principal to the lenders under the DIP Facility ("*Pari Passu* Status").

12. As of the filing of this Motion, the Debtors are evaluating the need to enter into Postpetition Hedges and have been in active discussions with the certain of the prepetition Hedge Counterparties regarding the relative benefits and drawbacks of doing so. As a result, the Debtors seek authority to enter into Postpetition Hedges to ensure they would be well-positioned to promptly entered into Postpetition Hedges with any Postpetition Hedge Counterparties should they determine in an exercise of their business judgement that doing so will be beneficial.

---

*Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* (the "DIP Motion"). Capitalized terms used but not defined herein have the meanings given to them in the DIP Motion.

**III.    Some of the Hedges May be Entitled to Special Treatment Under the Bankruptcy Code.**

13.    Certain hedging and trading arrangements are governed primarily by sections 546, 555, 556, 559, 560, and 561 of the Bankruptcy Code. Specifically, sections 546(e)-(g) (providing relief from certain avoidance actions), section 555 (providing for the liquidation of certain security accounts), section 556 (providing for the liquidation of forward and commodity contracts), section 559 (providing for the liquidation of certain repurchase agreements) of the Bankruptcy Code, in combination with sections 362(b)(6), (7), and (17) of the Bankruptcy Code, and section 560 (providing for the liquidation, termination, and acceleration of master netting agreements)—often referred to as the "safe harbors"—contain special protections for counterparties to forward contracts and swap agreements that enable such counterparties to, among other things, terminate, liquidate, and apply collateral held by the debtor notwithstanding the avoidance powers of a trustee or debtor in possession, subject to certain exceptions.

14.    The Debtors believe they must have the ability to maintain Prepetition Hedges and the flexibility to enter into the Postpetition Hedges if they determine in an exercise of their business judgment that doing so is likely to preserve the value of the Debtors' overall business.

## Basis for Relief

**I.    Section 363(c) of the Bankruptcy Code Authorizes the Debtors to Continue the Prepetition Hedges and Enter Into Postpetition Hedges.**

15.    Section 363(c) of the Bankruptcy Code provides, in relevant part, that a debtor in possession "may enter into transactions . . . in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The ordinary course of business standard embodied in this provision is intended to allow a debtor in possession the flexibility to run its business during its

7

chapter 11 proceedings. *Moore v. Brewer (In re HMH Motor Servs., Inc.)*, 259 B.R. 440, 448–49 (Bankr. S.D. Ga. 2000).

16. The Bankruptcy Code does not define "ordinary course of business." *In re Commercial Mortg. & Fin. Co.*, 414 B.R. 389, 393 (Bankr. N.D. Ill. 2009). However, courts have clarified that the standard is meant "to embrace the reasonable expectations of interested parties of the nature of transactions that the debtor would likely enter in the course of its normal, daily business." *Med. Malpractice Ins. Assoc. v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997) (quoting *In re Watford*, 159 B.R. 597, 599 (M.D. Ga. 1993)); *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3rd Cir. 1992) (stating that section 363 of the Bankruptcy Code is designed to allow a debtor in possession "flexibility to engage in ordinary transactions without unnecessary . . . oversight"). The two tests ordinarily applied by the courts to determine the ordinary course of business are the "horizontal" test and the "vertical" test. *Denton Cnty. Elec. Co-Op., Inc. v. Eldorado Ranch (In re Denton Cnty. Elec. Coop., Inc.)*, 281 B.R. 876, 882 & n.12 (Bankr. N.D. Tex. 2002); *In re Springfield Contracting Corp.*, 154 B.R. 214, 225–26 (Bankr. E.D.V.A. 1993). "The 'horizontal test' focuses on the way businesses operate within a given industry. The 'vertical test' focuses on the expectations of creditors." *Id.*

17. Maintaining the Prepetition Hedges and allowing the Debtors to enter into new Postpetition Hedges (to the extent of the capacity allowed under the DIP Order) satisfy both tests. Under the horizontal test, the Hedges are typical arrangements and ubiquitous among companies in the Debtors' industry. Accordingly, the Debtors believe maintaining the Prepetition Hedges and entry into Postpetition Hedges fall within the standard, ordinary course practice of companies in the Debtors' industry.

18. Under the vertical test, creditors' reasonable expectations of a debtor's "ordinary course of business" are based on the debtor's specific prepetition business practices and norms, and the expectation that the debtor will conform to those practices and norms while operating as a debtor in possession. *In re Garofalo's Finer Foods, Inc.*, 185 B.R. 414, 425 (ND. Ill. 1995). Thus, a fundamental characteristic of an "ordinary" postpetition business transaction is its similarity to a prepetition business practice. *Marshack v. Orange Commercial Credit (In re Nat'l Lumber & Supply, Inc.)*, 184 B.R. 74, 79 (9th Cir. B.A.P. 1995); *James A. Phillips*, 29 B.R. at 394. The size, nature and type of business, and the size and nature of the transactions in question, are all relevant to determining whether the transactions at issue are ordinary. *U.S. ex rel. Harrison v. Estate of Deutscher*, 115 B.R. 592, 598 (M.D. Tenn. 1990); *Johns-Manville Corp.*, 60 B.R. at 617. "Accordingly, a postpetition transaction undertaken by the debtor that is similar in size and nature to prepetition transactions undertaken by the debtor would be within the ordinary course of business." *Garofalo's*, 186 B.R. at 426.

19. It has historically been the Debtors' practice to hedge a substantial percentage of their production. The Postpetition Hedges will be substantively similar to the Debtors' Prepetition Hedges. Accordingly, the relief requested in the motion is consistent with the Debtors' own past, ordinary course practice. Moreover, courts in this and other jurisdictions have authorized debtors in commodities industries to continue or initiate hedging arrangements similar to the arrangements described herein in the ordinary course of business, pursuant to section 363(c)(1).

20. Accordingly, the Debtors believe continuing the Prepetition Hedges and entering into Postpetition Hedges, subject to the terms of the DIP Credit Agreement and the DIP Orders, are within the ordinary course of business and consistent with standard industry practice. The Debtors submit that authority to maintain the Prepetition Hedges and to enter into Postpetition

Hedges is appropriate and in the best interests of the Debtors, their estates, and all parties in interest in these chapter 11 cases, and should be permitted.

**II.     The Debtors Should Be Authorized to Grant Superpriority Status and *Pari Passu* Status Claims in Respect of the Postpetition Hedges and the Qualifying Prepetition Hedges Pursuant to Section 364 of the Bankruptcy Code.**

21.     Section 364 of the Bankruptcy Code authorizes a debtor to obtain "credit" on a superpriority or senior secured basis when obtaining such credit on other terms is unavailable. 11 U.S.C. §§ 364(c), (d).  Courts generally afford debtors considerable deference to determine, in their business judgment, the terms under which they obtain postpetition secured credit. *See, e.g.*, *In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011); *In re Curlew Valley Assocs.*, 14 B.R. 506, 513–14 (Bankr. D. Utah 1981).

22.     The Debtors, in consultation with their key stakeholders, believe that preserving the value of their operations and businesses requires continuation of the Prepetition Hedges and entry into Postpetition Hedges.  To provide the necessary comfort to the applicable Hedge Counterparties that the Debtors will be able to honor their obligations under the Permitted Hedge Payments, the Debtors seek to incur obligations that rank equally with the obligations arising under the DIP Facility for the Postpetition Hedges and Qualifying Prepetition Hedges.  Specifically, the Debtors seek authority to provide Superpriority Status and *Pari Passu* Status in respect of the Permitted Hedge Payments made on account of Postpetition Hedges with Hedge Banks and Qualifying Prepetition Hedges.

23.     Granting Superpriority Status and *Pari Passu* Status in respect of the Permitted Hedge Payments that relate to Postpetition Hedges and Qualifying Prepetition Hedges is not unduly burdensome to the Debtors, and the Debtors believe these grants are necessary to create willingness among the prepetition Hedge Counterparties to agree to allow the Debtors to continue the Prepetition Hedges and enter into any Postpetition Hedges, each of which is essential both to

the stability of the Debtors' businesses and the success of the Debtors' restructuring. In light of the foregoing, the Debtors believe that authorizing the Debtors to provide Superpriority Status and *Pari Passu* Status in respect of the Permitted Hedge Payments that relate to Postpetition Hedges and Qualifying Prepetition Hedges will help to preserve the value of the Debtors' estates and is, therefore, appropriate and in the best interests of the Debtors, their estates, and all parties in interest in these chapter 11 cases and should be permitted.

**Emergency Consideration**

24. Pursuant to Bankruptcy Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." The Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. The failure to receive the requested relief during the first 21 days of these chapter 11 cases could disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring. The Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested herein on an emergency basis.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

25. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**Reservation of Rights**

26. Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

**Notice**

27. Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Bankruptcy Local Rules, and is sufficient under the circumstances. Without limiting the

foregoing, due notice will be afforded, whether by facsimile, electronic mail, overnight courier or hand delivery, to parties-in-interest, including: (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) JPMorgan Chase Bank, N.A., as administrative agent under the Debtors' revolving credit facility; (d) Vinson & Elkins LLP, as counsel to the administrative agent under the Debtors' revolving credit facility; (e) Wilmington Trust, N.A., as indenture trustee under the Debtors' (i) 9.00% second lien secured notes due 2021, (ii) 9.250% second lien secured notes due 2022, (iii) 7.50% second lien secured notes due 2024, (iv) 7.750% second lien secured notes due 2024, and (v) 6.375% convertible notes due 2024; (f) Vinson & Elkins LLP, as counsel to JPMorgan Chase Bank, N.A.; (g) Wilmington Trust, N.A., as successor indenture trustee under the Debtors' (i) 6.375% subordinated notes due 2021, (ii) 4.625% subordinated notes due 2023, and (iii) 5.50% subordinated notes due 2022; (h) Paul, Weiss, Rifkind, Wharton & Garrison LLP, as counsel to the ad hoc committee of second lien bondholders; (i) Akin Gump Strauss Hauer & Feld LLP, as counsel to the ad hoc group of convertible bondholders; (j) the United States Attorney's Office for the Southern District of Texas; (k) the Internal Revenue Service; (l) the United States Securities and Exchange Commission; (m) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (n) the state attorneys general for states in which the Debtors conduct business; (o) the Hedge Counterparties; and (p) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court enter interim and final orders, substantially in the forms attached hereto, respectively, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Houston, Texas
July 30, 2020

/s/ *Matthew D. Cavenaugh*

| | |
|---|---|
| **JACKSON WALKER L.L.P.** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Vienna F. Anaya (TX Bar No. 24091225) | Joshua A. Sussberg, P.C. (*pro hac vice* admission pending) |
| Victoria Argeroplos (TX Bar No. 24105799) | Christopher J. Marcus, P.C. (*pro hac vice* admission pending) |
| 1401 McKinney Street, Suite 1900 | Rebecca Blake Chaikin (*pro hac vice* admission pending) |
| Houston, Texas 77010 | 601 Lexington Avenue |
| Telephone:  (713) 752-4200 | New York, New York 10022 |
| Facsimile:   (713) 752-4221 | Telephone:   (212) 446-4800 |
| Email:         mcavenaugh@jw.com | Facsimile:    (212) 446-4900 |
|                    vanaya@jw.com | Email:          joshua.sussberg@kirkland.com |
|                    vargeroplos@jw.com |                     christopher.marcus@kirkland.com |
| | rebecca.chaikin@kirkland.com |

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

-and-

David L. Eaton (*pro hac vice* admission pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:    (312) 862-2200
Email:          david.eaton@kirkland.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

**Certificate of Accuracy**

  I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Local Rule 9013-1(i).

              */s/ Matthew D. Cavenaugh*
              Matthew D. Cavenaugh

**Certificate of Service**

  I certify that on July 30, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

              */s/ Matthew D. Cavenaugh*
              Matthew D. Cavenaugh